WEILL *v.* CLARK'S ESTATE.

ADMINISTRATOR TRUST DEED.

Where H, W. and C. purchase real estate, and cause it to be conveyed in trust to secure the repayment of advances made by W. and C. on the purchase, and of subsequent expenses, by sale of the property, the residue to be conveyed to all three of the parties in certain proportions, and C., for a valuable consideration, assigns to H. a certain amount of claims for such advances, and dies without having received any portion thereof, and while such trust remains wholly unexecuted. *Held*: That H. has no claim against C.'s estate which his administrator could properly allow, or for the payment of which, in the event of a deficiency of personal assets, the county court could legally order the sale of real estate left by the decedent.

That the sale of the property by the heir and widow of decedent does not alter the condition of H.'s demand, in reference to C.'s estate.

TENDER—SALE OF REAL PROPERTY.

That a tender of the amount of a legitimate claim against the decedent's estate, made by his heir or the heir's grantee, conditioned upon the assignment of such claim to the party making such tender, or a tender by the trustee of the above described trust, as such, is invalid, and constitutes no legal ground for refusing an order of sale of the real estate to pay such claim.

APPEAL from Linn.

*Whalley & Fechheimer, and Weatherford & Blackburn,* for appellant.

*R. S. Strahan, and Flinn & Chamberlain,* for respondent.

By the Court, WATSON, J.:

The facts of the case appear to be, that John Conner, administrator of said estate, in Oregon, presented his application to the county court of Linn county for a license to sell the interest of the decedent in some real property, in this state, to pay off a claim allowed by him in favor of T. Egenton Hogg, amounting to $11,687.23, and one in favor of the Willamette Valley and Coast Railroad Company, of $1,115.24, and the expenses of administration, approximated at $250. Various objections were filed to both these claims by proper parties, which were overruled and the license granted, although Hogg's claim was reduced by the county court, when the license was granted, to the sum of $5,452.18.

This decision having been affirmed by the circuit court, an appeal has been taken to this court. By the terms of the stipulation filed in the cause, the claim of Hogg is to be deemed based upon the following contract, in connection with four other contracts, which will be considered hereafter:

" I, the undersigned, have advanced nine thousand dollars towards the payment of the purchase money of three twenty-fourths, of the Willamette Valley and Cascade Wagon Road Companies' stock and lands, and to pay the balance of the purchase money for said three twenty-fourths, and such advances as may be required on the part of said three twenty-fourths, as per agreement with Hogg, Weill and Clarke. Now this is to certify that when from the sale of said property, road or lands, or any part of either, the advances by me shall be repaid, one equal one-half of the nine thousand dollars, that is to say: $4,500 thereof is to be paid to the said T. Egenton Hogg, the said $4,500 having

become his property through and by means of an agreement made between said Hogg and myself, and for a valuable consideration to me paid by said Hogg, the receipt whereof I do hereby acknowledge, there is to be paid said Hogg, out of the first proceeds of the sale of lands and property, the sum of $952.18 in addition to the sum of $4,500 aforesaid. In evidence of which I have hereunto set my hand, this 22d day of September, 1871.

"H. K. W. CLARKE."

The agreement between Hogg, Weill and Clarke, referred to, is dated September 1st, 1871, and shows that on the 19th day of the preceding August, they purchased all the capital stock, road and lands of said company for $160,620.89— Weill advancing $140,526.39 of the purchase money, and Clarke the balance—and took a transfer and conveyance of said property to trustees for temporary convenience.

By this agreement the interests of the parties in the property were defined, new trustees designated, and provisions made for the sale of the property, application of the proceeds of sale, and division of the unsold residue among the parties.

The capital stock was to be transferred to Weill, and the realty conveyed to one David Cahn, in trust.

The property was not to be sold without the written consent of all the parties; but when sold the first proceeds were to be applied in payment of the purchase money advanced by Weill and Clarke, and any other advances it might be necessary for them to make, in perfecting the title to the property and in managing and disposing of it, with ten per cent. per annum interest thereon, compounded at the end of each year. Hogg's interest was declared to be eight twenty-fourths, Weill's thirteen twenty-fourths, and Clarke's three twenty-fourths; and when all the advances had been repaid out of the proceeds of sales, the trustees were to transfer and convey the unsold residue to the parties in said proportions.

On the 22d day of the same month this agreement was modified by another, in writing, duly executed by all the

parties, by which the trustee, David Cahn, or his successor, should, after the lapse of seven years from that date, if sufficient money had not by that time been realized from the sale of lands and property to pay off said advances and interest, sell in a prescribed manner a sufficient portion of said lands for that purpose, without the written assent of the parties.

The two other agreements referred to in the stipulation were secret agreements between Hogg and Clarke, by which they contracted together to consolidate their respective interests, and own equal interests, and share equally in the net profits of the investment.

It appears that a transfer and conveyance was duly made to Weill and Cahn in pursuance of the agreements between the parties, and that they accepted the trusts, but no sale of property was ever made, nor any profits therefrom ever realized, and the trusts still remain wholly unexecuted. Clarke was all the time a resident of the state of California, and died therein about May 20th, 1878. Frederick W. Clarke, his sole heir, was duly appointed administrator of his estate in the state of California. Afterwards, on April 9th, 1879, the said Frederick W. Clarke, as heir, and Sarah W. Clarke, the widow of deceased, made conveyance of said property to Alexander Weill for the aggregate consideration of $11,000. Hogg presented his claim to said administrator in the state of California, by whom it was rejected March 29, 1879, and afterwards presented it to the administrator in Oregon, by whom it was allowed, as already stated.

We deem it useless to discuss or determine several of the objections urged here against the allowance of this claim, as the facts found, in our judgment, disclose one of a fundamental and decisive character.

Hogg's demand is not a "claim" against Clarke's estate within the meaning of our statute conferring power upon administrators, with license from the proper county court, to sell the real estate of decedents to pay claims against their estates,

in the event of a deficiency of personal assets. (*Walker* v. *Diehl*, 79 Ill., 473.)

The word "claim" means a "legal demand for money to be paid out of the estate." (*Gray* v. *Palmer*, 9 Cal., 616.)

It is based upon the personal obligation or liability of the decedent, and must have accrued against him during life, or be of such a nature that it would have accrued against him if he had continued to live. (*Godding* v. *Porter*, 17 Abb. Pr., 374.)

If this claim of Hogg's could not have been recovered from Clarke before his death, nor since, if he had continued to live, it seems very plain that it cannot be a claim against his estate in the hands of his personal representative, which the latter can either properly allow or make the basis of an application for the sale of the real property belonging to the decedent under the power conferred by our statute.

Now the very nature of the claim, as disclosed by the arguments upon which it is based, shows conclusively that Clarke never was and never could be personally liable upon it, simply by force of the terms of such agreements; and no other acts on his part are claimed. Property belonging to Hogg, Weill and Clarke, in common, was conveyed to trustees, to hold in trust, until certain amounts advanced by Weill and Clarke should be repaid out of the proceeds of sales to be made of said property, in accordance with the agreement between the parties creating the trust.

Clarke, for a good and valuable consideration, assigns and transfers to Hogg, by a written instrument, a certain interest in his claim for advances under the trust deed and agreement.

That claim for advances is a charge upon the interests of Hogg and Weill, as well as of Clarke, in the property conveyed in trust, and under the terms of their agreement the interest of each should contribute proportionally toward their liquidation. It is evident that Clarke could have obtained repayment of his advances only through an execution of the trust so created, and his assignment of a portion of his

claim for such advances to Hogg, only put him in the same position.

It is an equitable right merely, in either, which must be pursued in equity under the terms of the trust. The county court, sitting in probate, has no jurisdiction over the execution of trusts, such power belonging to courts of equity alone. (Willard on Executors and Administrators, 420 and 421.)

As Clarke never received any portion of his advances, and never did anything to make himself personally liable to Hogg upon or concerning this claim, we are forced to the conclusion that it never became a charge against his estate, within the legitimate sphere of administration in the county court.

We have treated the agreement upon which Hogg's claim was based, in connection with the other agreements mentioned, as amounting virtually to an assignment by Clarke of a certain interest in his claim for advances, and we think it can reasonably have no other construction.

There was certainly no intention to make Clarke personally liable for anything, but only to give Hogg a right to a certain amount out of a specific fund, when arising from sales of property, and this to be accomplished through the intervention of trustees, and in conformity with the provisions of the agreement declaring the trust.

The sales by the heirs and widow to Weill could not possibly affect Hogg's claim, and convert it from an equitable demand upon the proceeds of specific property in the hands of a trustee, into a legal claim against the estate of Clarke generally. These sales were unquestionably subject in law to his rights under the trust in David Cahn.

The county court of Linn county had no jurisdiction over the claim, and its proceedings in relation to it were clearly erroneous. But the objections relating to the claim of the Willamette Valley and Coast Railroad Company, we do not think equally well taken.

The tenders of the heir and his grantee were coupled with the condition that the claim should be assigned to them; and

the tender of David Cahn, the trustee, was clearly officious and unauthorized. The latter had no beneficial interest in the property, and was under no obligation or necessity as such trustee to prevent the sale of the decedent's interest, subject to the trust. In no view do these alleged tenders seem to us to possess any validity, and we think they were properly disregarded.

The result of the views we have here advanced is, that the decision in the court below should be modified so far as to exclude the claim of T. Egenton Hogg from being considered a claim against the estate of H. K. W. Clarke, deceased, and limiting the sale of the real property described in the petition of the administrator, to a sufficient quantity thereof to satisfy and pay off the expenses of administration and said claim of the Willamette Valley and Coast Railroad Company.

The appellants to have costs and disbursements of suit.