Argued March 5, reversed March 24, rehearing denied June 2, 1914.

# CROW *v.* CROW.

## (139 Pac. 854.)

**Mortgages—Conclusiveness—Matters Concluded.**

1. Under Section 756, L. O. L., making decrees other than certain kinds enumerated conclusive between the parties thereto and their representatives and successors in interest in respect to the matter directly determined by it, a decree foreclosing a mortgage is conclusive that at the time of the decree the defendant owed plaintiff the amount adjudged as principal, interest, and attorneys' fees, though the decree was entered upon confession.

> [As to the conclusiveness of a judgment foreclosing a mortgage, see note in 18 Am. St. Rep. 790.]

**Mortgages—Consideration—Evidence.**

2. In a suit for an accounting and to compel the conveyance of land to plaintiff, evidence *held* to show, irrespective of a former decree to that effect, that plaintiff was indebted to defendant in the amount of a mortgage made to defendant and afterward foreclosed against plaintiff.

**Witnesses- ·Credibility—Falsus in Uno Falsus in Omnibus.**

3. When a witness deliberately swears to a material fact, and in a subsequent case admits that he swore to that' fact, but that his tes-

timony was false, and does not claim that he was honestly in error in his evidence in the first instance, a court cannot rely on anything to which he testifies, unless he is strongly corroborated; the maxim *"falsus in uno falsus in omnibus"* being applicable.

> [As to credibility of witnesses, see note in 86 Am. Dec. 328. As to evidence to show bias or credibility of witness, see note in 91 Am. St. Rep. 193.]

**Judgment—Conclusiveness—Persons Concluded—Codefendants.**

4. A decree setting aside as fraudulent as to plaintiff a conveyance between codefendants, in a suit in which the codefendants joined in the answer and agreed in their evidence, is not competent evidence in a subsequent suit between the codefendants, since their interests were not adverse in the former suit.

**Fraudulent Conveyances—Enforcement of Reconveyance—Laches.**

5. Where plaintiff mortgaged and afterward conveyed land, as he asserts, to evade litigation with a third person, and in 1884 the grantee refused to convey a portion thereof at plaintiff's request to a creditor of the latter, and in 1893 refused to convey to plaintiff, a suit by plaintiff in 1909 to compel reconveyance to him, after death of three persons familiar with the transactions, is barred by laches.

> [As to the enforcement in equity of stale claims, see note in Ann. Cas. 1914B, 314.]

From Lane: LAWRENCE T. HARRIS, Judge.

Department 1.   Statement by MR. JUSTICE RAMSEY.

This is a suit by H. G. Crow against E. J. Crow and Olive Crow for an accounting and to require defendants to convey to the plaintiff certain real estate. On the death of plaintiff pending suit, Albert Abraham, as his executor, was substituted as plaintiff.

The court below entered a decree against the defendants for an accounting, etc., and being dissatisfied therewith, prosecute this appeal. On the death of E. J. Crow pending the appeal his administratrix, Olive Crow, was substituted as defendant.

The material facts appear in the opinion of the court.          REVERSED AND SUIT DISMISSED.

For appellants there was a brief over the names of *Mr. Oliver P. Coshow, Mr. Lark Bilyeu* and *Mr. Sjur P. Ness,* with an oral argument by *Mr. Coshow.*

For respondent there was a brief over the names of *Mr. Albert Abraham,* and *Messrs. Brown & Eddy,* with an oral argument by *Mr. Abraham.*

Mr. JUSTICE RAMSEY delivered the opinion of the court.

The pleadings in this case are too prolix to be set forth in this opinion. The real property in dispute is situated in Douglas and Lane counties. The property in Douglas County consists of several hundred acres of land, and that in Lane County consists of lots in Eugene. The property is particularly described in the complaint, and need not be described in this opinion.

The following is a brief summary of the main points of the pleadings:

"This is a suit brought by H. G. Crow against his brother E. J. Crow and his wife, Olive Crow, in the Circuit Court for Douglas County. The plaintiff died before the case came on for trial and Albert Abraham was substituted as party plaintiff. The defendant E. J. Crow died after this appeal was taken and his widow, Olive Crow, has been substituted as party defendant.

"The plaintiff, by his amended complaint filed June 9, 1909, alleges: That being indebted to Marks & Co., he made, executed, and delivered his note, on January 12, 1878, in favor of the said firm, for the sum of $412.07 and mortgaged all of his real property, describing it, to the firm to secure the payment of this note. That the defendant E. J. Crow purchased the said note and mortgage and became the owner thereof on October 25, 1880. That on the 27th day of October, 1880, the plaintiff herein confessed judgment in the Circuit Court for Douglas County in favor of the defendant herein, for the sum of $632.57, the same being the amount then due on the note and mortgage given to Marks & Co. That the plaintiff herein had

some trouble with his wife. That in order to discourage litigation on her part, he made, executed, and delivered to this defendant his promissory note for the sum of $6,500, and mortgaged all of his real property to this defendant to secure the payment of said promissory note, and he alleges that it was executed on April 22, 1880, and further that there was no consideration for the said note and mortgage, except a desire to so encumber his property in order to discourage litigation with his wife with whom he had trouble. October 28, 1880, the plaintiff confessed judgment in said court, in favor, of the defendant, for the sum of $7,706.80, this being the amount then due, with interest and costs, on the $6,500 note, dated October 22, 1879. On February 26, 1883, the plaintiff made, executed, and delivered to the defendant his warranty deed, conveying his real property above referred to. It is alleged that there was no consideration for such deed, but that it was made to more effectually avoid any financial difficulty with his said wife. That it was verbally understood between the parties that the defendant E. J. Crow should hold the title, so conveyed, in trust. And that when the defendant had been repaid what the plaintiff owed that E. J. Crow should reconvey the premises. The plaintiff became further indebted to the above-mentioned firm of Marks & Co., and that firm did on the 19th day of January, 1884, procure a judgment against the plaintiff herein, in the said court, for the sum of $623.96. That he had no property out of which this judgment could be made or satisfied, and that the said firm brought a suit in the said court to set aside the transfer of the property from the plaintiff to the defendant and asked for an order selling the said property to satisfy their said judgment. That in said suit the plaintiff and the defendant in this suit were made defendant. That after a trial of the issues in that suit it was held by the court that the transfer from the plaintiff to the defendant was void as to the plaintiff in that suit, to wit, Marks & Co., and the court ordered the premises sold to satisfy the Marks & Co. judgment taken on

January 19, 1884. This suit was appealed by the defendants in that case to the Supreme Court. That upon such appeal the case was tried and a decree rendered and by which the decree of the Circuit Court was substantially affirmed. That it was ordered that the premises should be sold and that from the proceeds should be paid: First, the amount of the costs of sale and expense of the suit; second, the amount of the judgment in favor of E. J. Crow, taken on October 27, 1880, on the first Marks & Co. note and mortgage which he had bought, and at the time of the decree amounting to $1,035.30; third, in payment of the amount of the Marks & Co. judgment of January 19, 1884, and amounting at the time of the decree to $747.29; and, fourth, that the remainder, if any, be paid over to the defendant E. J. Crow. That after the mandate was received in the Circuit Court an execution was issued and the sheriff for said county sold said real property on April 4, 1887. That the defendant E. J. Crow became the purchaser at the said sheriff's sale. That his bid was $4,000. That there was no redemption from the sale. And that a sheriff's deed was issued, by the order of the said court, confirming the said sale. That plaintiff herein alleges that it was verbally agreed between the parties that E. J. Crow should bid in the said property and hold the same in trust. That he should have the right to convey so much of it as might be necessary to reimburse him for any sums due and owing to him. That he paid the sum of $1,236.11 on account of the satisfaction of the Marks & Co. suit and judgment, including costs and disbursements, but that no other part of the said sum of $4,000 was in fact paid. It was claimed in the complaint that the defendant E. J. Crow had secured large sums of money from the estate of the father and of the mother of these parties, belonging rightfully to the plaintiff; that the plaintiff had conveyed an undivided interest in a lot in Eugene, Oregon, to the defendant in trust. The court specifically finds that the defendant did not get any money from said estate belonging to the plaintiff and that the conveyance of the land at

Eugene was an absolute sale; and no further mention will be made of these matters in this case. It is alleged that the defendant sold a portion of the land, referred to as the 'Looking Glass Property,' which was included in the mortgages, the deed of February 26, 1883, and also in the sheriff's sale of April 4, 1887, and that he received therefor the sum of $2,000. That the plaintiff paid large sums to the defendant in wheat, oats, cattle, and sheep, prior to the said sale on execution, and that the defendant refuses to account for the property so received. That the plaintiff refuses to reconvey the said premises and denies that there ever was or had been any trust agreement and claims that the confession of judgment, deeds, and sale on execution was absolute and without reservation. The plaintiff prayed for an accounting; that he have a judgment in $3,000; that the sheriff's deed, above referred to, be declared a trust deed; and that it be declared that the defendant E. J. Crow was holding the unsold lands in trust for the use and benefit of the plaintiff.

"The defendant by his answer entered a specific denial as to the material allegations of the complaint, and by affirmative answer sets up the taking and making of the deed of February 26, 1883, and that the same was for a valuable consideration. The answer in the suit brought by Marks & Co. against H. G. Crow and E. J. Crow, above referred to, is set out in full in the answer in this case. H. G. Crow was the moving party in such suit; that he verified and filed the answer and when the case was called for trial he was sworn as a witness and testified under oath as to the various transactions between the brothers; in that suit he positively identified the several judgments by confession and stated that the amounts were true and correct. That the deed of February 26, 1883, was absolute and without reservation, and that he surrendered possession of the premises to E. J. Crow on that date. That after that time when he was on the land he was there by permission only. The defendant alleges that the plaintiff is estopped, by reason of the said proceed-

ings, suits, and judgments, to which he was a party, by the execution of his own warranty deed, by the issuance of a sheriff's deed after confirmation of the sale in the case of Marks & Co., in which sale and confirmation he acquiesced, from disputing or from denying the title of this defendant to the premises from which he, the plaintiff, solemnly asserted he had sold and surrendered to the defendant. That the defendant has been and is the owner in fee simple of all of the properties conveyed. That the possession of a portion of the said premises by the plaintiff was by the permission of the defendant and in order to enable the plaintiff to have a home. That the claim of the plaintiff set up herein is *res adjudicata* between these parties; that it is stale, and as to a portion that it is barred by the statute of limitations.

"The reply admits the filing and verification of the answer in the 'Marks' case, and admits that the plaintiff herein, as a defendant in that suit, did testify as alleged by the defendant herein, but claims now that when he did so testify that it was false, and that it was not done so voluntarily, but that this defendant induced him to swear falsely in that case.

"This suit was heard on depositions taken and on testimony taken in open court, and a decision and decree was rendered and filed herein on the 27th day of December, 1912. The court below by its said decision holds that the heirs at law and the estate of H. G. Crow own the land, describing it, with certain exceptions recited in the decree. That the ownership of the said land by said estate and heirs is subject to a lien held by E. J. Crow, who has the record title, but whose real title is that of a trustee. That such lien is in whatever sum may be owing from H. G. Crow to E. J. Crow. That an accounting cannot be had as to what amount is due on the testimony taken in the case. That an accounting should be had for the purpose of determining the sum due E. J. Crow, and E. J. Crow was required to file his claim within 20 days from the date of the decree, for such accounting. A decree was rendered on this decision, and from this decision and decree the defendants appeal to this court."

It is claimed by the plaintiff's complaint, that on or about April 22, 1880 (nearly 34 years ago), the plaintiff was in difficulty with a recently married wife, and anticipating financial difficulties growing out of his trouble with her, and in order to discourage and prevent the same, he made and executed to the defendant his promissory note for the sum of $6,500, payable to the defendant, and at the same time executed and delivered to the defendant a mortgage upon the real property in dispute (or nearly all of it) purporting to secure the payment of said promissory note and interest thereon. Said mortgage was in all respects duly executed, witnessed, and acknowledged. It was recorded April 22, 1880, but it and the note bear date of October 22, 1879. The complaint alleges that said note and mortgage were really executed on or about April 22, 1880, but antedated "October 22, 1879."

Ida May Crow, the plaintiff's wife, began a suit against him in the Circuit Court of Douglas County for divorce and alimony on April 10, 1880, and process was served on him in said suit on April 19, 1880. In her complaint in said suit, his wife accused him of cruel and inhuman treatment of her, and demanded a divorce and alimony in the sum of $500 a year and for general relief. The record shows that he was married to his said wife on October 25, 1879 (three days after the date of said promissory note and said mortgage given to secure it).. Said suit for divorce was pending until May 9, 1881, and on that day a decree was rendered by said Circuit Court granting to said Ida May Crow a divorce from H. G. Crow, but not granting her any alimony, her demand for alimony having been in the meantime stricken out by consent.

On January 12, 1878, the plaintiff made and delivered to S. Marks & Co. his promissory note for

$421.07, and, at the same time, he executed to said firm, to secure the payment of said promissory note, a mortgage upon nearly all of the real property in dispute. This mortgage was duly recorded.

The plaintiff alleges that the note and mortgage to the defendant for $6,500, made as stated *supra,* were executed without any consideration, and that he did not at that time owe the defendant anything, and he asserts, in his complaint and in his evidence, that he made said note and mortgage because of the difficulty that he was having with his wife, "to prevent and discourage" financial difficulties with her. In his evidence he says: "I married another woman. * * She stayed two weeks with me and she ran off like she was crazy, and the next thing I knew was a great lawsuit and a large howl. I read it * * and I knew it was false from beginning to end, and it occurred to me that I had better talk to an attorney. His name was J. H. Kennedy. I handed it to him, and says I, 'Kennedy, what do you think of that?' Well, he read it and turned pale, and he turned kind of blue like, and he says, 'Henry, there is nothing to it but a speculation, and there will have to be something done'; and I says, 'I don't know what to do.' I was so green. I knew nothing about law, and I says to him, 'What can be done or what will we do?' and he says, 'I would put everything I got in trust to some person'; and says I, 'You attend to it and put it in trust, and all my honest debts is to come out, whatever they are. I did not put it in trust against any honest debts,' says I. 'I would never do that,' says I. * * 'I don't think that there is anything wrong for to give away from the gross robbery from that woman.' I did (make the mortgage). He (Kennedy) fixed up the papers. They fixed up the papers and I signed them. Of

course, they were exaggerated. They were fixed to cover up so as to hold my property. There was over 1,000 acres of land.''

The plaintiff asserts in his complaint that said mortgage was made to ''discourage and prevent'' financial difficulty with his wife, and, in his evidence, he swears that the note and mortgage were made to cover up and to hold his property. He testified in this suit that there was no consideration for their execution.

The defendant paid S. Marks & Co. the amount due them on said note and mortgage made to them by the plaintiff, as stated *supra,* and took an assignment thereof to himself. On October 27, 1880, the defendant herein commenced a suit in the Circuit Court of Douglas County against the plaintiff herein to foreclose the mortgage made by the plaintiff herein to S. Marks & Co., and by them assigned to this defendant, and process was served on the plaintiff, and the plaintiff herein appeared in said foreclosure suit and filed a written stipulation therein, confessing judgment for the sum of $421.07 principal, and $150 interest, and $54.50 as attorneys' fees, and for costs and disbursements and for a decree of foreclosure therein, and agreeing that a decree for said sums and for a foreclosure of said mortgage should be entered by said court in favor of E. J. Crow, and said court entered a decree in accordance with said stipulation.

1. On October 28, 1880, the defendant herein commenced in the Circuit Court of Douglas County a suit against the plaintiff herein to foreclose the said mortgage given by the plaintiff herein to the defendant herein for said sum of $6,500 and interest as stated *supra.* Process was duly served upon the plaintiff, and he appeared in said suit and signed and filed

therein a stipulation by which he confessed judgment therein in favor of the plaintiff for said principal sum of $6,500 and interest, and $426.80 as attorneys' fees, and for costs and disbursements, and agreed that a decree for said sums and interest and costs and disbursements and for the foreclosure of said mortgage should be entered by said court in said suit. On the 18th day of October, 1880, said court entered a decree for said $6,500 principal, $780 interest and $426.80 as attorneys' fees and for costs and disbursements and foreclosing the mortgage on said land, etc. This decree was entered in a suit, regularly begun, after personal service of process and appearance of the defendant therein, on his stipulation for the entry of said decree. The decree was regular, the court having jurisdiction of the subject matter of the suit and of the person of the defendant. It was a valid decree. It is important to determine the effect of this decree between the parties thereto.

Under Section 756, L. O. L., a decree of this kind is conclusive between the parties thereto and their representatives and successors in interest in respect to the matter directly determined by it. The matter directly determined in that suit was that H. G. Crow was indebteded to E. J. Crow in the said principal sum of $6,500, and in the sum of $780 as interest, and in the sum of $426.80 as attorneys' fees, and that he was entitled to a decree for said sums and for the foreclosure of said mortgage and the sale of said real property. Those matters were alleged in the plaintiff's complaint in said suit and they were directly determined by said decree.

In *Homer* v. *Fish,* 18 Mass. (1 Pick.) 439 (11 Am. Dec. 218), the court says:

"It is certainly a principle admitted by all the courts in the abstract, that a matter of controversy which has been inquired into and settled by a court having jurisdiction of the subject cannot be drawn into question again, in another suit between the same parties, for the purpose of defeating or avoiding the effects of a judgment of the court to which it has been submitted."

In *Bateman* v. *Willoe*, 1 Sch. & Lef. 204, Lord REDESDALE says, *inter alia:*

"It is not sufficient to show that injustice has been done, but that it has been done under circumstances which authorize the court to interfere; because, if a matter has already been investigated in a court of justice, according to common and ordinary rules of investigation, a court of equity cannot take on itself to enter into it again. Rules are established, some by the legislature, some by the courts, for the purpose of putting an end to litigation, and it is more important that an end be put to litigation than that justice should be done in every case."

In 2 Black, Judgments (2 ed.), Section 500, the author says:

"That the solemn and deliberate sentence of the law, pronounced by its appointed organs, upon a disputed fact or state of facts, should be regarded as a final and conclusive determination of the question litigated, and should forever set the controversy at rest, is a rule common to all systems of jurisprudence."

In *Garwood* v. *Garwood*, 29 Cal. 514, the court says:

"The judgment of a court having jurisdiction directly upon the point in controversy is, as a plea in bar, and as evidence, complete and conclusive between the same parties and their privies. * * A fact or matter in issue is that upon which the plaintiff proceeds by his action, and which the defendant controverts in his pleading."

Where a judgment is entered by agreement of the parties, or upon confession of the defendant in an action pending wherein the court has jurisdiction, the judgment so rendered is conclusive upon the parties, and its effect is the same as it would have been if it had been rendered after a trial on the merits: *Allen* v. *Norton,* 6 Or. 344; 1 Black, Judgments, § 78; 23 Cyc. 78; *Stites* v. *McGee,* 37 Or. 574 (61 Pac. 1129).

In *Allen* v. *Norton,* 6 Or. 344, the court says:

"It is claimed that this, being a judgment by confession under a particular statute (it) has not the same presumption in its favor as one rendered by the same court in an action pending in court in the regular course of business. So far as this matter is concerned, under our Code, all proceedings are, to a great extent, regulated by statute, and we think great uncertainty would result from attempting to establish different rules in determining the effect of different classes of judgments rendered in the same court, and we think a judgment by confession must be determined by the record of the judgment, and the judgment sale, and that no inquiry can be had into the consideration of the instrument on which it was founded; for the parties by agreeing to the judgment, have waived all right to impeach the consideration of that instrument on which it was founded."

1 Black, Judgments, Section 78, says:

"In contemplation of law, a judgment on a warrant of attorney, is as much an act of the court as if it were formally pronounced on *nil dicit* or a cognovit, and until it is reversed or set aside, it has all the qualities and effects of a judgment on a verdict. A judgment upon confession is therefore just as conclusive between the parties and their privies, of the facts and points necessarily involved in and determined by it, and as final a bar to the maintenance of another suit for the same demand, as any other judgment."

The decree in favor of E. J. Crow and against H. G. Crow, referred to *supra,* on the $6,500 note and mortgage, was rendered in a suit pending after service of process· and the appearance of the defendant, and the defendant stipulated in writing that it should be entered, and the court entered said decree in accordance with said stipulation and the demand of the complaint in that suit. That decree established conclusively that, at the date of its rendition, H. G. Crow owed E. J. Crow, including principal, interest, and attorneys' fees, the sum of $7,706.80. The plaintiff in this suit attempts to show by the evidence of himself that there was no consideration for the execution of said $6,500 note and the mortgage executed to secure its payment, and that, therefore, said decree based on said note and mortgage does not show that H. G. Crow owed E. J. Crow said sum of money; but said decree was rendered by a court of competent jurisdiction upon said note and mortgage, and he appeared in said court and agreed in writing that said decree should be entered against him in all respects as it was entered, and, hence, said decree ·conclusively establishes the fact that he owed E. J. Crow at that time $7,706.80. H. G. Crow does not claim that there was any fraud on the part of E. J. Crow in obtaining said note, or said mortgage, or said decree. His attempt now is to impeach said decree by testifying that there was no consideration for the execution of said note and mortgage, and that he made them to cover up his property to prevent his wife's obtaining against him alimony for which she had sued. But he cannot be heard now to urge any such claim. H. G. Crow and his privies are conclusively bound by said decree.

E. J. Crow testified that H. G. Crow owed him $6,500 for which said note and mortgage were given,

and H. G. Crow, in a suit brought against him and E. J. Crow and referred to below, testified positively that he owed said E. J. Crow said $6,500, and that said promissory note and said mortgage represented a real *bona fide* debt that he owed E. J. Crow.

2. We hold that said decree established conclusively that H. G. Crow owed E. J. Crow the amount for which it was entered, and that H. G. Crow failed to show, by a preponderance of the evidence apart from said decree, that he did not owe E. J. Crow the amount stated in said note. It is true that he swore that he did not owe it, but it is true, also, that in another case referred to below, where his evidence was material, he testified that he did owe said money. There was an utter failure on the part of H. G. Crow to show that E. J. Crow induced him to testify as he did in the case referred to.

3. The maxim *"falsus in quo falsus in omnibus"* applies to this witness. When a witness deliberately swears to a material fact, and in a subsequent case admits that he did swear to that fact, but testifies that it was false, and does not claim that he was honestly in error in his evidence in the first instance, a court cannot rely on anything to which he testifies, unless he is strongly corroborated. In this case, he is not strongly supported by any witness as to any material facts in dispute. One witness testified that he heard E. J. Crow say that H. G. Crow was going to put his property out of his hands, but E. J. Crow denies having made said statement. Apart from the evidence of that witness as to what he claims to have heard E. J. Crow say, there is no material evidence produced by the plaintiff to show that the $6,500, mentioned in said note and mortgage, did not represent a *bona fide* debt in that amount owing by him to the defendant,

excepting the evidence of the plaintiff himself. His evidence is contradicted by the evidence of the defendant, by the promissory note, and the mortgage given for said debt, by his acts in confessing judgment therefor, and by his own evidence given in another case, and referred to *infra*.

For the reasons stated *supra,* we find that, at the date of said promissory note and mortgage, the plaintiff did owe the defendant said sum of $7,706.80, and that said decree for $7,706.80 based thereon, was a valid decree, and that it has not been impeached. As the plaintiff does not claim to have paid more than a small portion of said decree, the holding that said decree for said amount was valid and conclusive evidence of the existence of said debt, practically determines this case in favor of the defendant, as the final determination is controlled by that fact.

On February 26, 1883, the plaintiff conveyed all of the property in dispute except the Eugene property to the defendant for the expressed consideration of $4,000. The evidence shows that the plaintiff had made some payments on the amount that he owed the defendant on the said decrees, and the defendant made some deductions from the amount, and took the said deed to the said real property in payment of the balance of the debt that the plaintiff owed him on the two decrees. The conveyance was an ordinary warranty deed without conditions. The plaintiff became again indebted to S. Marks & Co. in the sum of $623.96, and said firm obtained a judgment against him in the Circuit Court of Douglas County for that amount, and, not being able to find anything belonging to the plaintiff out of which to make said judgment, said firm began a creditor's suit against H. G. Crow and E. J. Crow to set aside the deed of conveyance made

by said H. G. Crow to E. J. Crow, as stated *supra,* on the ground that said deed was made to defraud said firm as a creditor of H. G. Crow and without consideration.

4. The court made a decree holding said deed to be fraudulent as to said firm, and requiring the sale of said real premises, and ordering the proceeds of said sale to be applied to the payment of the said judgment of said firm and providing, also, that whatever of the proceeds of said sale remained after paying the amount due S. Marks & Co. should be paid or delivered to E. J. Crow, the grantee in said deed. Said property was offered for sale under said decree and sold to E. J. Crow for $4,000. Said sale was confirmed, and a sheriff's deed for said premises, in due form, was made to E. J. Crow, vesting in him the title to said property in fee, without any condition. In said suit of S. Marks & Co. against H. G. Crow and E. J. Crow, said H. G. Crow was a witness, and testified that he owed E. J. Crow on October 29, 1880, the date of the entry of said decree in favor of E. J. Crow on the note and mortgage for $6,500, the sum of $7,706.80, and that he had paid E. J. Crow some on said indebtedness, and that he owed him at the date of the execution of said deed of conveyance, made by him to E. J. Crow, the amount stated in said deed ($4,000). He testified, also, that that amount was a fair price for the land, and that said sale "was absolute, entire, and without reservation," and that he, on making said deed, surrendered the possession of the land to E. J. Crow and moved to Lane County. He testified that afterwards, E. J. Crow told him that if he would go on the land and take care of it he would pay him for his work, etc.

The decree of the court in said creditor's suit of *S. Marks & Co.* v. *H. G. Crow and E. J. Crow* was an adjudication of the matters determined thereby as between said firm and H. G. Crow and E. J. Crow, because the interests of said firm and said other parties were adverse to each other; but said decree was not an adjudication of the rights of H. G. Crow as to E. J. Crow, because their interests in said suit were not adverse to each other. They joined in their answer, and it was verified by H. G. Crow. Both were sworn in that cause, and they agreed substantially in their evidence as to the facts. The decree in that case is not competent evidence to prove, in this case, that said deed was made without consideration.

In 23 Cyc. 1279, the author says:

"Although a judgment is conclusive upon all the parties to the action, so that no one can allege anything contrary to it merely because his coplaintiff or codefendant is not joined with him in the second suit, yet the estoppel is raised only between those who were adverse parties in the former suit, so that the judgment therein settles nothing as to the relative rights or liabilities of the coplaintiffs or codefendants *inter sese,* unless their conflicting or hostile claims were brought into issue by cross-petitions or separate and adverse answers and were thereupon actually litigated and adjudicated."

In *Ostrander* v. *Hart,* 130 N. Y. 413 (29 N. E. 745), the court says:

"A judgment against a plaintiff in favor of a defendant determines nothing between the latter and a codefendant, because, although both are parties to the action, they are not 'adverse parties' as that phrase is applied to the subject of former adjudication."

In volume 2 of his work on Judgments (2 ed.), Section 599, Mr. Black says:

"As a general rule, parties to a judgment are not bound by it in a subsequent controversy between themselves, unless they were adversary parties in the original action. That is to say, a judgment for or against two or more joint parties ordinarily determines nothing as to their respective rights or liabilities as against each other in their own subsequent controversy."

In volume 1 of his work on Judgments (4 ed.), Section 158, Mr. Freeman says:

"Parties to a judgment are not bound by it, in a subsequent controversy between each other, unless they were adversary parties in the original action. If A recovers judgment against B and C, upon a contract, which judgment is paid by B, the liability of C to B in a subsequent action for contribution is still an open question, because as to it no issue was made or tried in the former suit."

In *Conwell* v. *Thompson*, 50 Ill. 329, the syllabus is:

"The record of proceedings in a suit in chancery is not even *prima facie* evidence in favor of one of the parties thereto against another in a proceeding at law, where, as between those parties, in the chancery suit in which they were codefendants, there was nothing litigated."

See, also, on this point *O'Rourke* v. *Lindell Ry. Co.*, 142 Mo. 351 (44 S. W. 254); *Estate of Heydenfeldt,* 127 Cal. 456 (59 Pac. 839); *Buffington* v. *Cook,* 35 Ala. 312 (73 Am. Dec. 491); *Koelsch* v. *Mixer,* 52 Ohio St. 207 (39 N. E. 417); *Eikenberry* v. *Edwards,* 71 Iowa, 85 (32 N. W. 183).

As stated *supra,* in the case of *S. Marks & Co.* v. *H. G. Crow and E. J. Crow* to set aside the deed of conveyance referred to above, H. G. Crow and E. J. Crow were codefendants and filed a joint answer therein; but no issue as to their rights as between themselves was made or determined by the decree in

that case, except that the decree therein provided that
the surplus of the proceeds of the sale of said real
property remaining after the payment of what was
due S. Marks & Co. should be delivered or paid to
E. J. Crow. This was a recognition of the fact that
said property was understood by the court granting
said decree to belong to E. J. Crow.

We do not find it necessary to go into the question
as to whether the plaintiff could be permitted to main-
tain this suit in view of his statement in his complaint
and in his evidence to the effect that he made the mort-
gage for $6,500 to the defendant to cover up his prop-
erty, so that his wife could not compel him to pay her
alimony.

We find from the evidence that the plaintiff was in-
debted to the defendants in said sum of $6,500 when
he made the said promissory note to the defendant and
executed to him said mortgage. We base this finding
on the decree of the Circuit Court made in the suit
brought to foreclose said mortgage and upon the other
evidence as stated *supra.* That decree conclusively
established that fact, but in addition to said decree we
have the positive evidence of the defendant that the
plaintiff owed him that sum and the equally positive
evidence of the plaintiff, given in said suit of S. Marks
& Co. that he owed the defendant that amount, and
the presumption arising from the execution of said
note and mortgage and the confessing of said judg-
ment. On the other hand, we have the evidence of the
plaintiff, given in this case, that he did not owe said
money and that he executed said note and mortgage to
cover up his property to prevent his wife's recovering
from him alimony. We have also, the evidence of an-
other witness that he heard E. J. Crow, at one time,
say that the plaintiff was going to put his property out

of his hands, and E. J. Crow's denial of that statement. We are constrained by the evidence to find against the plaintiff as to said indebtedness and as to the purpose for which he executed said note and mortgage. We can give little weight to the evidence of the plaintiff for the reason that he stands impeached by his own evidence. He swore falsely either in this case or in the said creditor's suit. He says that he swore falsely in the creditor's suit, but we have no means of knowing whether that statement is true or not, and, hence, we are constrained to distrust all his evidence. We do not find any reason to believe from the evidence that the plaintiff acted under the influence of the defendant in any of the transactions related in this case. The plaintiff deeded said land to the defendant in February, 1883, and began this suit about June, 1909, about 26 years after he conveyed away said land.

5. The plaintiff testified that in 1884 he asked the defendant to convey a small portion of the land in dispute to S. Marks & Co., to pay a bill that he owed said firm at that time, and that the defendant refused to make said deed.

B. L. McKee, a witness for the plaintiff, testified that, in 1893, he heard a conversation between the plaintiff and defendant, and that the plaintiff demanded of the defendant that the latter deed to him the home place, and that the defendant refused to do so. If those witnesses tell the truth, the defendant refused to make a deed to one piece of land 25 years before this suit was commenced, and he refused to deed him the home place 15 years before he began this suit. If the plaintiff's claim was true, that the defendant was holding this property as his trustee, the refusal of the defendant to make those conveyances was a vio-

lation of a trust, and the plaintiff should have brought a suit long ago to obtain a reconveyance of the land.

A. H. Kennedy was the person who prepared the $6,500 note and mortgage and who foreclosed said mortgage, and it appears from the evidence that he knew the facts as to the indebtedness represented by said note and mortgage and why they were executed. Judge J. J. Walton assisted in transacting some of the important business between these parties. The mother of the plaintiff and defendant was in a position to know many of the material facts. But the plaintiff delayed bringing this suit to obtain a reconveyance of the property in dispute until after Walton and his mother had died and Kennedy was either dead or where he could not be reached and produced as a witness, and until the facts were stale and impossible to be proved as fully as they could have been shown 20 years ago. Both of the parties were elderly men when this suit was commenced, and both have died since that time. By thus delaying bringing a suit, the plaintiff was guilty of laches, and his supposed cause of suit became stale. As courts of equity aid the vigilant rather than those who slumber on their rights, the plaintiff's laches in waiting so long before bringing a suit is of itself a good reason for holding that no relief should be granted to his successors in interest: *Wilson* v. *Wilson,* 41 Or. 459 (69 Pac. 923); *Loomis* v. *Rosenthal,* 34 Or. 585 (57 Pac. 55); *O'Brien* v. *Wheelock,* 184 U. S. 450 (46 L. Ed. 636, 22 Sup. Ct. Rep. 354); *Patterson* v. *Hewitt,* 195 U. S. 309 (49 L. Ed. 214, 25 Sup. Ct. Rep. 35).

The material facts upon which the plaintiff relied were practically unsupported by any evidence excepting that of himself, and his evidence was contradicted by his own evidence given in another case, and by his

own admitted acts and by the evidence of the defendant, and hence, we are constrained to hold that the plaintiff failed to make out a case justifying the granting of relief. What the true facts of this case were, we cannot know, because of the conflict in the evidence, but we hold that the plaintiff has failed to show, by a preponderance of the evidence, any right to relief. The weight of the evidence is with the defendant. The plaintiff was discredited by his contradictory statements made under oath.

We hold that the successors in interest of the defendant own the property in dispute, and that the successors in interest of the plaintiff are not entitled to any of the property in dispute or to any accounting.

The court below held that the property in Eugene belonged to the defendant, and as there was no appeal from that part of the decree of the court below, it will stand.

We find that the court below erred, and all of the decree of the court below, excepting that portion thereof holding that the defendant owned the property in Eugene, is reversed, and the plaintiff's complaint is dismissed, but neither party will recover costs or disbursements in this court or in the court below.

REVERSED AND SUIT DISMISSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.