Argued July 5, affirmed October 5, 1960

In the Matter of the Estate of
FRED BRODERS, Deceased
HARTUNG *v.* UNANDER et al

355 P. 2d 738

*Frank E. Nash* and *Maurice Georges,* both of Portland, argued the cause for appellant. On the briefs were King, Miller, Anderson, Nash & Yerke, Omar W. Halvorson and Kenneth Lewis, all of Portland.

*William E. Dougherty,* Special Assistant Attorney General, Portland, argued the cause for respondent Sig Unander. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

*Stanley R. Darling,* Eugene, argued the cause for respondent Violet M. Broders.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN and HOLMAN, Justices.

PERRY, J.

This is an appeal from a determination by the Circuit Court of the state of Oregon for Lane county of the inheritance tax computed upon the estate of Fred Broders, deceased.

The facts upon which the determination was made are not in dispute and are as follows:

Fred Broders, the deceased, and Violet M. Cook were married May 18, 1952. The day prior to this marriage an antenuptial agreement was entered into between these parties which, in effect, provided that Violet as the wife of Mr. Broders renounced her statutory rights of inheritance in and to his estate and he would provide for her by will a sum of $10,000 and a life estate in certain real property, the balance of his estate to pass to his lawful heirs. No will was executed by Fred Broders and on November 21, 1954,

he died intestate. Claudia Broders Hartung, a sister of the deceased, was appointed administratrix of the estate.

Subsequent to the commencement of the administration of the estate, the wife Violet commenced a suit contending the antenuptial agreement was void. No trial was had in the suit as a compromise settlement was entered into between the widow and Mrs. Hartung, individually and as administratrix, the sole interested parties in the estate, and upon stipulation of the parties the cause was dismissed with prejudice.

Under the compromise agreement, the widow received property of the value of $87,898, in addition to certain statutory allowances, and the sister received the balance of the estate. The sum received by the widow was considerably in excess of what she would have received under the antenuptial agreement.

The question presented is: Should the inheritance tax be computed upon the values based upon what each of the parties would have received by reason of the antenuptial agreement or upon what each did receive under the compromise agreement made by the sister and widow after Mr. Broders' death?

The circuit court sitting in probate determined the inheritance tax should be computed upon values based upon what each would have received had the prenuptial contract controlled the distribution of the estate. Mrs. Hartung in her capacity as administratrix and an heir has appealed.

If the position of the trial court is to be sustained, it must rest upon the validity of the antenuptial agreement. The state treasurer and the widow contend that this premise is the true one since the antenuptial contract was not declared void, and liken the situation to the compromise of a will contest.

In will contests the courts of the various state jurisdictions are not uniform in their views. Some hold that the sums paid to contestants are expenses of the estate and thus not inherited at all; others, that the nature of the settlement is determined by the nature of the claim and, therefore, sums paid in settlement of a claim of heirship are inherited by the recipient and the recipient taxed. Still others hold that the settlement paid by the legatees to the contestants is no more than an assignment of a portion of the legatee's right of inheritance which he may dispose of as he sees fit and, therefore, the tax falls upon the legatee. See 36 ALR2d 917; 29 Columbia Law Rev. 1164 (1929). This latter rule is the one which has been followed in this state by the state treasurer and the reasoning behind this rule is set forth in the 1946-48 Opinions of the Attorney General p. 182:

"It will be observed that chapter 1, title 20, O.C.L.A., makes no express provision for the taxation of money derived from the compromise of a will contest, and there appears to be no doubt as to the legislative intent, for, in unambiguous terms, it is specifically pointed out that the tax is levied upon 'all property' which 'shall *pass* or *vest* by *dower, curtesy, will* or *by statutes of inheritance,*' and '*shall take effect at and accrue upon the death,*' and no language is contained therein from which it may be construed to include property passing by agreement, subsequent or otherwise, between the heirs and legatees. (Italics theirs)

"The precise question involved here has not been passed upon by our own supreme court, and, in looking to the decisions of the courts of other states, the great weight of authority appears to hold that in cases where suits have been instituted to contest wills, and before or after such suits are finally determined a settlement takes place and a compromise agreement is entered into by the legatees, heirs

at law, or beneficiaries interested, that successions are taxed only in the manner *provided by the will* and that subsequent events did not affect it. In re Cook, 187 N.Y. 253, 78 N.E. 991, and many other decisions to the same effect. (Italics ours)

"It is not necessary to review these cases or state at length the reasons by which they are supported. The theory upon which the majority rule proceeds is aptly stated by Royce A. Kidder, in his work on State Inheritance Tax and Taxability of Trusts, at page 28:

" 'The descent of property held by inheritance or devise is regulated entirely by statutory provisions, and under the inheritance tax laws, the property so passing is subject to tax at certain specified rates and is due at the death of the decedent; that to permit the heirs, legatees and parties interested in an estate to change by agreement among themselves, after the death of a testator or decedent, the proportionate amounts of the property on which the respective beneficiaries should pay an inheritance tax, might, in some instances, practically deprive the state of all power of collecting any inheritance tax; that the rights of the state to inheritance tax are fixed as of the date of the death of a decedent, and those rights cannot be annulled or abridged by any subsequent agreement between the parties interested in the estate of the decedent.'

" * * * * *

"It is my opinion, therefore, based upon the foregoing, that the tax in question should be determined according to the terms of the will."

Our examination of these cases which follow the latter rule discloses that the courts' decisions rest upon the premise, although not always so stated, that there is, in fact, an adjudication of the validity of the testator's will. This must be so, for if the will is not sustained, then the testator's property passes not in

accordance with the terms of the will, but according to the laws of descent and distribution, and is taxed accordingly.

The situation presented by the facts in this case is, however, somewhat different. There was no will and, under these circumstances, there being no children of the deceased, the widow at his death was entitled to the entire estate unless estopped by a valid agreement to the contrary.

The parties have not cited and our research has failed to reveal any cases where a similar situation has been passed upon by the courts.

■ It is well-established that the right of an individual to dispose of his property by will is not a natural right, but is one conferred by law. *Closset et al. v. Burtchaell et al.*, 112 Or 585, 230 P 554. Likewise, the right to take property by descent is a creature of the law. *McDermid v. Bourhill*, 101 Or 305, 199 P 610, 22 ALR 428. In the case of a will, the testator selects those who shall share his bounty. There being no will, the statutes of descent and distribution determine who shall benefit.

■ If property is disposed of by a valid will, the rights of legatees and devisees are fixed immediately upon death according to the terms of the will. If no will exists, the rights of the heirs are fixed as of the date of death. In contesting the validity of a will, the contest is between those who would take under the law of descents and distribution and those named as beneficiaries.

However, in the matter before us the law has named who should be the recipient of the property, and it is only if that statutory heir may not receive that the heirs at law may receive.

Whether or not there was or was not a valid ante-nuptial agreement depends upon the effect to be given to the dismissal with prejudice of the widow's suit to set aside this agreement. The stipulation of the parties is as follows:

"IT IS HEREBY STIPULATED, by and between the above-named plaintiff and defendants, by and through their respective attorneys, that the above entitled and numbered action may and shall be dismissed with prejudice to the right of plaintiff to again institute any action, suit or other proceeding for, on account of or connected with any of the matters or things specified in the complaint in said action, no one of the parties hereto to have or recover costs or disbursements from any other, and that an order in accordance with the foregoing may be made and entered at any time without further notice."

The judgment of the trial court is as follows:

"Based upon the stipulation of the parties hereto, on file herein, it is hereby

"ORDERED that the above entitled and numbered action be and the same hereby is dismissed with prejudice to the right of plaintiff to again institute any action, suit or other proceeding for, on account of or connected with any of the matters or things specified in the complaint in said action, no one of the parties hereto to have or recover costs or disbursements from any other."

█ There can be little question but that the dismissal of her suit with prejudice prevents the widow from again raising the question of the validity of the antenuptial agreement in any subsequent proceeding between the parties without also attacking the validity of the judgment itself. *Johnstone v. Chapman Timber Co.*, 79 Or 674, 156 P 286.

■ Since no attack was alleged upon the validity of the judgment, it is the general rule that the judgment is res judicata as to the issues raised by the pleadings and "its effect is the same as it would have been if it had been rendered after trial on the merits." *Crow v. Crow,* 70 Or 534, 546, 139 P 854. See also *Garner v. Garner,* 182 Or 549, 189 P2d 397; *State ex rel. Dean v. Dean,* 136 Or 694, 300 P 1027, 86 ALR 79.

■ The judgment entered in this case was, in effect, then that the plaintiff's case failed, leaving an adjudication that the antenuptial agreement was a valid and binding contract at the time it was entered into. This being so, there is an adjudication that at the time of Fred Broders' death the widow was entitled to receive from his estate only that which had been agreed upon and the balance passed to Mrs. Hartung.

This court being of the opinion that the better rule of law is that now followed by the State Treasurer, to the effect that the inheritance tax is to be determined by the adjudicated rights of legatees, devisees and heirs to share in the estate of a deceased party as of the time of death and not by what the parties may thereafter agree among themselves each shall receive, the judgment of the trial court is affirmed.