Argued and submitted July 14, affirmed November 16, 1982

# FIRST NATIONAL BANK OF OREGON,
*Plaintiff-Appellant,*

*v.*

# DEPARTMENT OF REVENUE,
*Defendant-Respondent.*

## (No. 1457, SC 28392)

653 P2d 985

Brad Littlefield, Portland, argued the cause for plaintiff-appellant. On the briefs were Gerson F. Goldsmith and Goldsmith, Siegel, Engel & Littlefield, Portland.

Ted E. Barbera, Assistant Attorney General, Salem, argued the cause for defendant-respondent. With him on the brief was Dave Frohnmayer, Attorney General, Salem.

ROBERTS, J.

## ROBERTS, J.

Plaintiff seeks review of a decision of the Oregon Tax Court denying a claim for refund of inheritance taxes which were paid as the result of the probate of an estate. The facts have been stipulated and are stated here as set out in the opinion of the tax court.

"* * * On February 18, 1957, Anna and Sigfrid Berliner, wife and husband, executed mutual wills whereby each left all of his or her property to the survivor and then, if the estate was less than $10,000 and Anna's sister did not survive, to be divided among various relatives. If the estate was greater than $10,000, each left the remainder of his or her estate to Manfred M. Warren, Erwin Berliner and Hanna Wilber as trustees of a specific trust, for the benefit of Anna's sister for life and then to others named or to class beneficiaries. Sigfrid died October 16, 1961, with his will in force, survived by Anna, who took under the will. On January 24, 1966, Anna revoked her mutual will and executed another, leaving virtually all of her estate to the University of Goettingen, in Germany.

"Upon Anna's death, the trustees of the trust created by the mutual wills of 1957 filed a claim in the estate for the net amount of Anna's estate, claiming as beneficiaries under her prior will. This claim was disallowed by the personal representative. The trustees then commenced a suit on the claim against the personal representative of the estate, alleging that there had been a mutual agreement by Sigfrid and Anna to dispose of property in accordance with the terms of mutual wills and the breach of that agreement by Anna in her revocation of the first will (after Sigfrid's death) followed by the execution of the second will which made no reference to the trust. They alleged that, except for the breach by Anna, the property would have passed to the trustees to be held for the purposes of the trust. The trustees prayed for specific enforcement of the agreement between Sigfrid and Anna, in accordance with the mutual wills, the imposition of a trust on all assets in possession of the personal representative in favor of the trust and a declaration that the trustees were owners of the property.

"However, prior to trial, the parties (the personal representatives of the estate, the trustees and the University of Goettingen) entered into a settlement agreement whereby the trustees would receive 50 percent of the 'net probate

estate' of Anna Berliner after deduction of the costs of administration. Upon application to the probate court, a decree was entered, declaring that 'the claim of plaintiffs' (the trustees) was allowed, that the Estate of Anna Berliner 'was indebted to plaintiffs' (the trustees) for 50 percent of the net probate estate and ordering the personal representative to distribute 50 percent of the net probate estate to the trustees.

"First National Bank of Oregon, as personal representative, had previously filed an inheritance tax return with the Department of Revenue, showing inheritance tax of $227,176 due on the estate and simultaneously making full payment of that amount. Following the entry of the decree in circuit court, the personal representative filed for a refund of $118,207. This claim for refund was denied by the Department of Revenue * * *."

The personal representative then filed a complaint in the Tax Court claiming that the amount paid to the trustees as a result of the settlement should be allowed as a deduction from the estate for state inheritance tax purposes under ORS 118.070(1)(a) as a claim against the estate. The Tax Court affirmed the denial of a refund; we affirm the Tax Court.

Former ORS 118.070(1)(a) provided at the time of decedent's death:

"In ascertaining the net value of the estate for the purpose of computing inheritance tax, the following deductions, and no others, may be made from the gross value of the taxable estate:

"(1) In probated estates:

"a. Claims allowed against the estate owing at the time of death and paid from property the value of which is included in the taxable estate.

"* * * * *"

Plaintiff and defendant argue at some length over whether plaintiff's claim is "against the estate" or "to the estate." The Tax Court, relying on *Weill v. Clark's Estate,* 9 Or 387 (1881) concluded the compromise settlement was not a claim against the estate. It quoted *Weill:*

"The word 'claim' means a 'legal demand for money to be paid out of the estate.' [Citation omitted.]

"It is based upon the personal obligation or liability of the decedent, and must have accrued against him during life, or be of such a nature that it would have accrued against him if he had continued to live. [Citation omitted.]" 9 Or at 391.

The Tax Court continued:

"The distinction between 'claim,' as it is defined by the court in *Weill,* and the payment under the compromise agreement is readily apparent. The claim of the trustees to the Berliner Estate was not a 'legal demand for money,' but was rather an equitable claim for specific performance of a right which arose simultaneously with Anna's death. The compromise entered into between the parties in settlement of that suit for specific performance ripened into a debt of the estate, as stated in the decree, but this agreement was not made until after the death of Anna Berliner. Courts have recognized this distinction. *See Bank of California v. Connolly,* 111 Cap Rptr 468, 482, 36 Cal App3d 350, 371 (1973)."

*Hartung v. Unander,* 224 Or 165, 169, 355 P2d 738 (1960) points out that various jurisdictions treat settlements in will contests differently.

"* * * Some hold that the sums paid to contestants are expenses of the estate and thus not inherited at all; others, that the nature of the settlement is determined by the nature of the claim and, therefore, sums paid in settlement of a claim of heirship are inherited by the recipient and the recipient taxed. Still others hold that the settlement paid by the legatees to the contestants is no more than an assignment of a portion of the legatee's right of inheritance which he may dispose of as he sees fit and, therefore, the tax falls upon the legatee. See 36 ALR2d 917; 29 Columbia Law Rev. 1164 (1929). * * *"

The latter rule, as the opinion states, had been followed in Oregon by the State Treasurer. An Attorney General's opinion,[1] cited in *Hartung,* states that "the great weight of authority appears to hold that * * * successions are taxed only in the manner *provided by the will* and that subsequent events did not affect it. *In re Cook,* 187 NY 253, 78 NE 991, and many other decisions to the same effect." (Emphasis added in *Hartung.*) 224 Or at 169-70.

---

[1] 23 Op Att'y Gen 182-83 (1946-48).

The Attorney General's opinion relied on R. Kidder, State Inheritance Taxation and Taxability of Trusts 28 (1934) and the *Hartung* case quoted from that text:

" 'The descent of property held by inheritance or devise is regulated entirely by statutory provisions, and under the inheritance tax laws, the property so passing is subject to tax at certain specified rates and is due at the death of the decedent; that to permit the heirs, legatees and parties interested in an estate to change by agreement among themselves, after the death of a testator or decedent, the proportionate amounts of the property on which the respective beneficiaries should pay an inheritance tax, might, in some instances, practically deprive the state of all power of collecting any inheritance tax; that the rights of the state to inheritance tax are fixed as of the date of the death of a decedent, and those rights cannot be annulled or abridged by any subsequent agreement between the parties interested in the estate of the decedent.' " 224 Or at 170.

This court in *Hartung* expressed its approval of the rule followed by the State Treasurer to "the effect that the inheritance tax is to be determined by the adjudicated rights of legatees, devisees and heirs to share in the estate of a deceased party as of the time of death and not by what the parties may thereafter agree among themselves each shall receive, * * *." 224 Or at 173.

The Oregon Tax Court has been consistent in holding that an inheritance tax is calculated by determining who has a right to a share of the estate and the value of the right at the time of death. *Merkle v. Commission,* 2 OTR 283 (1966); *Jayne v. Department of Revenue,* 6 OTR 251 (1975); *Estate of Anderson v. Department of Revenue,* 6 OTR 339 (1976), *see* note at 346.

A large majority of jurisdictions have adopted the rule that inheritance taxes are to be calculated on the estate at the time of death and based on the disposition made by the will rather than the distribution made by a compromise agreement. 42 Am Jur2d Inheritance, Estate, and Gift Taxes, § 76, (1969) and cases cited therein particularly *In re Cress' Estate,* 335 Mich 551, 56 NW2d 380 (1953); *Emanuelson v. Sullivan,* 147 Conn 406, 161 A2d 788 (1960); *Borish v. Zink,* 2 NJ Super 42, 64 A2d 461 (1949); *Estate of Jorgensen,* 267 Wis 1, 64 NW2d 430 (1954). *See*

*also In re Gufler's Estate,* 43 Wash 2d 440, 261 P2d 434 (1953); 78 ALR 716-22 (1932). One court has expressed the state's interest in estates of deceased persons in fairly strong language.

"* * * [T]he State has a vested financial right in the estate of every decedent in this State which is subject to the payment of an inheritance tax, and such right is equal in degree to that of the personal representative, the heir or devisee of the decedent, and it vests at the same time that the interest of the personal representative, heir or devisee vests. * * *." *Board of Regents of University of Wisconsin v. Illinois,* 404 Ill 193, 198, 88 NE2d 489, 492 (1949).

Plaintiff relies on two cases, *In Re Klose's Estate,* 147 Or 512, 34 P2d 636 (1934) and *First National Bank of Amarillo v. United States,* 422 F2d 1385 (10th Cir 1970) in which the courts allowed deductions for settlements. Both, however, are distinguishable. In *In Re Klose's Estate* the amount of a settlement was excluded from taxation as compensation for services rendered and because the money was in a German bank where it could never have been reached by the executor except for the compromise. The court said "[a]n inheritance tax is a charge or toll which the State makes upon the right to transmit or to receive property on the death of the owner." 147 Or at 520. It concluded the money the claimant was permitted to draw from the bank in Germany as compensation for services rendered was not paid to her as a part of her legacy because it did not pass through the "toll gate" and therefore was not subject to an inheritance tax.

Similarly, *First National Bank of Amarillo* addressed a settlement based upon decedent's promise to leave his property to claimant if she would manage his household, assist him in ranching and business activities, and take care of his personal needs. The court characterized the question as one to be decided by whether the claim was "against the estate," one based upon obligations of the decedent or of the estate, or "to the estate," that is, bequests and legacies and concluded the claim was against the estate. In both these cases the distinguishing feature lies in the fact that the decedents had incurred obligations to the claimants in their lifetimes because of services claimants had performed.

■ The rule that inheritance tax is determined by the amount of the estate at the time of death and cannot be altered by a later agreement between the heirs and challengers to the will appears to be well established and has been applied in Oregon at least since *Unander, supra*. We, therefore, agree with the Tax Court that the language of the statute providing for deduction of claims that are "owing at the time of death" is not applicable to settlements that have been compromised as a result of a will contest. What the trustees had at the time of death was a viable legal challenge to the will which did not ripen into a share of the estate until the compromised settlement had been approved by the court. At the time of death the University of Goettingen was the legatee and the inheritance tax obligations attached at that moment to the entire inheritance.[2]

Affirmed.

---

[2] Plaintiff also relies upon the language of the circuit court decree as support that the settlement was in fact a claim against the estate. The decree provides:

> "It is hereby ordered, adjudged and decreed that the claim of plaintiffs be and is hereby allowed in the amount of 50% of the net probate estate of the above referenced decedent after deduction of costs of administration, all as set forth in such stipulation; that the estate of the decedent is indebted to plaintiffs in such amount; that the personal representative is ordered upon distribution of the estate to distribute 50% of such net probate estate to plaintiffs; * * *"

Plaintiff's dependence on the language of the decree does not take into account the fact that the circuit court was not deciding the merits of the claim; it was only giving legal recognition to the stipulation and approving it. As the tax court pointed out in the present case:

> "* * * the general rule * * * is that a probate court's allowance of a claim is not conclusive for the purpose of determining its deductibility in computing inheritance taxes unless the court has actually passed upon the merits of the claim. *See First Mechanics Nat. Bank v. Commissioner of Int. Rev.*, 117 F2d 127 (3rd Cir 1940); Anno, 132 ALR 1464; 42 Am Jur2d, Inheritance, etc., Taxes § 294." 9 OTR at 120, n. 2, December 7, 1981. *See also Indiana Dept. of State Revenue v. Kitchin*, 119 Ind App 422, 86 NE2d 96 (1949).