[Filed April 14, 1891.]

ANTHONY NEPPACH, ASSIGNEE, *v.* J. H. JONES.

STALE EQUITY — QUESTION OF FACT. — What constitutes a stale equity is regarded as a vexed question, hardly susceptible of an accurate definition; it is not length of time alone that is a test of staleness, but the question must be determined by the facts and circumstances of each case, and according to right and justice.

IDEM — STATUTE OF LIMITATIONS. — Nor in determining whether or not the claim or equity is stale, is the court confined to the statutory period, but may refuse relief in cases where the delay is less or greater than that named in the statute.

Multnomah county: L. B. STEARNS, Judge.

Plaintiff appeals.    Affirmed.

*Nicholas & Osborn,* for Appellant.

*Ira Jones,* for Respondent.

LORD, J.—This is a suit in equity to have a conveyance of certain lands therein described from the insolvent Wm. Ramsey and its subsequent conveyance to the defendant Jones declared void, and the defendant required to convey the same to the plaintiff. The facts in substance were these: The insolvent Wm. Ramsey made a general assignment for the benefit of his creditors on the 23d day of February, 1880, to one Pringle, but the court in 1890 thereafter appointed the plaintiff in the present suit assignee.   On the same day he executed a conveyance to one F. of the land in controversy, which was designed to pay or secure certain indebtedness as disclosed by the answer of the defendant, and soon thereafter died, leaving a will, by which he devised all his right and title to the land in dispute to his executors.   A few days prior to such assignment, the defendant and his partner had commenced an action and levied an attachment on the said land, and a certificate was filed as required by law upon the date of such assignment.   Several years intervening, and no proceeding being taken under the assignment, and acting on the supposition that it had been abandoned, the defendant obtained judgment on the 10th day

of March, 1885, upon which execution issued April 6, 1885,
under which the land was sold and he became the purchaser.
Some year or so thereafter a litigation was commenced and
carried on between the executors of F. and the defendant,
which was finally adjusted and settled, and the possession
and title of F. were transferred to the defendant on the 15th
day of December, 1888, who has since been in possession,
and claims that the rights of the plaintiff are barred by the
statute of limitations.  It thus appears that the deed and
assignment were more than ten years old, and that no pro-
ceedings had been taken under the assignment until the
commencement of the present suit, alleging that the deed to
F. was fraudulent, and praying that it be declared void.
The pleadings, and especially the answer, are quite volum-
inous in setting forth *in extenso* the action and proceedings in
the attachment and the sale made thereunder, the litigation
instituted by the executors of F. to recover the property in
controversy and its final settlement, and the payment of a
large sum by the defendant, and the proceedings taken
under the assignment, showing that nothing had been done,
or that it was in course of settlement, and other facts
designed to exhibit the staleness and inequity of the claim
and suit of plaintiff as against the rights of the defendant to
the land in controversy.  There is nothing in the record
which specifies the ground upon which the suit of the
plaintiff was dismissed and the title of the defendant as
against the plaintiff confirmed, other than the decree of the
court which "finds from the answer of the defendant, and
not denied by the reply of the plaintiff, that the equities of
the suit are with the defendant." This we conceive pro-
ceeded mainly upon the ground that the facts set up in
respect to the assignment, and the laches and delay of the
plaintiff while the defendant was harassed by litigation for
the recovery of the property in dispute,—the title of F., which
he finally procured by a settlement and payment to the
executors of a large sum of money,—not denied or explained,
exhibited a stale claim or equity which was fatal to the

merits of his suit as assignee; that the case as it stood confessed on the pleadings at the hearing by reason of such delay and laches of the plaintiff were such as would render a court of equity passive, or justify its refusal to grant relief.

There is certainly nothing shown even to indicate what were the impediments to an earlier prosecution of the suit to secure the land in controversy for the payment of the claims alleged, or how under the circumstances he could have remained so long ignorant of his rights as such assignee when so much was openly transpiring calculated to awaken his knowledge, if any rights he had, and no means were used to fraudulently keep him in ignorance of them.

What constitutes a stale equity, is regarded as a vexed question, hardly susceptible of an accurate definition; it is not length of time alone that is a test of staleness, but the question must be determined by the facts and circumstances of each case, and according to right and justice. Nor in determining whether or not the claim is stale, is the court confined to the statutory period, but may refuse relief in cases where the delay is less or greater than that named in the statute. From the original appointment to the commencement of the present suit, no action has been taken or anything done, although covering more than the statutory period, to indicate that any insolvent estate was in the course of settlement or pending; and it was certainly the duty of the plaintiff, if necessary for any cause, to seek the aid of a court of equity without unreasonable delay, for during the interval the defendant was pursuing modes to secure and perfect his rights upon principles substantially equitable and without any fradulent concealment; and as the facts conceded in the pleadings in our judgment indicate that he could not have been without knowledge of the existence of such rights, and the defendant's conduct in the interim, he must have regarded such rights acquired by the defendant as just and equitable, and acquiesced in them, otherwise negligence would seem justly imputable to him. In *Linsay Petroleum Co.* v. *Hurd*, 5 P. C. Cas. 8, Eng. R. 196, the court

says: "The doctrine of laches in courts of equity is not an arbitrary or technical doctrine. Where it would be practically unjust to give a remedy, either because the party has by his conduct done that which might fairly be regarded as equivalent to a waiver of it, or where by his conduct and neglect he has, though perhaps not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterwards to be asserted, in either of these cases, lapse of time and delay are most material. * * * Two circumstances, always important in such cases, are the length of the delay, and the nature of the acts done during the interval, which might affect either party and cause a balance of justice or injustice in taking one course or the other, so far as relates to the remedy."

Upon analogous principles, the lapse of time especially, when there was equal means of knowledge of the original transaction, and a failure to take any steps under the assignment, and no explanation or excuse for such delay, while at the same time the defendant was seeking openly in the same court to protect his title to the land in controversy from the action of the executors, and expending large sums in the settlement of such litigation, combined with all the circumstances set forth, much of which is matter of record, bring the case within the rule that lapse of time and staleness of the equity or claim requires upon principles of equity and justice that the decree of the court below be affirmed and the bill dismissed.

On rehearing.

PER CURIAM.—The point suggested as to the assignee is immaterial. It is the staleness of the proceeding, under the circumstances, which influenced the judgment of the court.