Argued 23 July; decided 11 August, 1902.

## WILSON *v.* WILSON.

[69 Pac. 923.]

MANNER OF URGING DEFENSE OF LACHES—DEMURRER.

1. The question as to whether a claim or demand is too stale to form the basis of a suit in equity may be raised by demurrer where the complaint shows the requisite facts.

EQUITY—WHEN LACHES IS A DEFENSE.

2. Where, through the *laches* of a complainant in equity, it has become doubtful whether defendant can command the evidence necessary for a fair presentation of his case, or defendant has been deprived of any advantage which he might have had, or will be subjected to any hardship that might have been avoided, if the suit had been seasonably instituted, equity will not grant relief, though the full limitation applicable to a remedy at law may not have expired.

EXAMPLE OF LACHES.

3. Two years after the the death of one of two partners his foreign administrator sued the surviving partner within this state on notes previously executed to deceased in settling firm business. Defendant (plaintiff here) attempted to set up equitable defenses by way of answer, but made no attempt to avail himself of them by way of cross bill, as he could have done, and judgment went against him. Subsequently his land was sold under the judgment, and purchased by the administrator as such, and still later a domestic administrator appointed for deceased sold the land so purchased by the foreign administrator, and defendant (present plaintiff) purchased it. None of the partnership assets, except the notes, were accounted for to the administrators; the surviving partner remaining in possession of them. Ten years after decedent's death, and after the the administrators had applied most of decedent's personal assets upon his debts, and had practically settled his estate, the surviving partner sues for an accounting, and seeks the benefit of his equitable defenses to the notes, alleging further that his deed from the domestic administrator is void, and seeking to imprss a trust upon the land. *Held,* that the claim is barred by laches.

From Douglas: JAMES W. HAMILTON, Judge.

This is a suit by W. C. Wilson and wife against Geo. W. Wilson, personally and as administrator, and Geo. M. Brown, as administrator.

The complaint alleges, in substance, that plaintiffs are husband and wife; that prior to November, 1888, and until May 3, 1895, plaintiffs were the owners in fee of 1,608 acres of land, situated in Douglas County, Oregon, particularly describing the same; that plaintiff W. C. Wilson, and defendant George W. Wilson are brothers, and the sons of Daniel Wil-

son, deceased; that prior to May, 1888, W. C. and Daniel were stockholders in the Green Mountain Mining Co., a private corporation, and together owned more than half of the capital stock thereof; that the corporation was the owner of a quartz mining claim situated in Douglas County, but not upon the said lands of plaintiffs; that on or about May 22, 1888, W. C. and Daniel entered into a copartnership, for the purpose of leasing and working the claim for their own advancement and benefit, and then and there agreed with each other upon the following terms, namely, that W. C. should procure a lease from the company, take possession thereof, and work the claim and attend to it, direct, manage, and supervise the operation of the same in extracting gold therefrom; that Daniel should advance from his private funds such sum or sums of money from time to time as might be necessary to purchase tools, machinery, and supplies, pay for labor, and defray other expenses in operating the mine, which money, so advanced, was to be expended by the copartnership, and repaid to Daniel out of the clear profits of the venture; and that the profits remaining after paying such advances and the losses incurred in operating the business should be divided and shared equally between the partners; that in pursuance of the agreement, W. C. procured the lease of the mine for the copartnership, entered into possession, managed, and supervised the opening, improving and working thereof, and continued so to do until the death of Daniel, November 14, 1890; that prior to November 30, 1888, Daniel advanced $1,800, and subsequently, on or about December 23, 1888, advanced $580, aggregating $2,380, all of which was expended in the operation of said mine, in accordance with the copartnership agreement; that the copartnership expended and incurred liabilities in working and operating said mine far in excess of the moneys advanced by Daniel; that on or about said November 30, 1888, Daniel, being desirous of withdrawing his personal attention from the business, and removing to the State of Washington, requested plaintiff to assume the entire responsibility of operating the mine, and to collect and remit to him the net profits of the

business, applicable to the repayment of the amount so advanced, and to secure the payment of the same by the promissory note of the plaintiffs; that W. C. acceded to such request, and thereupon with his wife, executed and delivered to Daniel their promissory note for said claim of $1,800, payable three yars after date, and on December 23, 1888, executed a second note for $580, payable in one year; that the sole and only consideration for said notes was the money expected to be realized from the business of the copartnership over and above the operating expenses, and the amount thereof applicable to the reimbursement of Daniel for the advances made; that W. C. operated said mine skillfully and prudently, but at a loss far in excess of said advances, without at any time realizing any profit applicable to the payment or discharge of said promissory notes, or either of them, whereby the consideration thereof wholly and entirely failed; that such copartnership continued until the death of Daniel, and no settlement of the accounts and business has ever been had with him, or any representative of his estate; that the copartnership property is undisposed of, and that upon a full and final accounting a large amount of money will be found due W. C. from the estate of Daniel; that Daniel died in the State of Washington, and on December 19, 1890, the defendant George W. Wilson, was appointed administrator of his estate in that state; that on December 23, 1892, he, as such administrator, instituted an action upon each of said notes in the circuit court for Douglas County in this state, and that plaintiffs appeared and filed their answer in each of said actions, which were adjudged insufficient, because equitable in their nature, and did not constitute a defense at law, whereupon judgments were given and rendered against them; that on September 19, 1893, he caused executions to issue, and certain personal property of W. C. to be sold; that later, on February 1, 1894, he caused *alias* executions to issue, and the aforesaid real property to be sold to satisfy the same; that George W. Wilson, as such administrator, became the purchaser, and subsequently, on or about May 3, 1895, obtained a sheriff's deed therefor; that on

April 22, 1897, upon the application of George W. Wilson as administrator, the defendant George M. Brown was, by the county court of Douglas County, appointed adminstrator of the estate of Daniel in and for the State of Oregon, to whom letters of administration were duly issued; that Brown, assuming to act as such administrator, and after obtaining a license therefor, sold the land so purchased by George W. as administrator to satisfy the claims against the estate in the State of Washington, and that W. C. became the purchaser thereof at such sale for the sum and price of $1,600, which sum he paid to Brown as such administrator, and subsequently received a deed in pursuance of such sale from said administrator; that the legal title to said lands was in George W. personally, and not in the estate of Daniel, and that by reason thereof the sale to W. C. was null and void; that Brown, as administrator, has remitted to George W. Wilson, administrator in the State of Washington, a part of said sum of $1,600, and threatens to remit the balance, consisting of $250, unless restrained; that George W. threatens to, and will, unless restrained, transfer the legal title to all of such lands to some innocent purchaser, and thereby prevent plaintiffs from enforcing their equitable title thereto, to their irreparable injury; that defendants have had notice at all times of the equities of plaintiffs, as herein set forth, and that plaintiffs have been ever since May 1, 1888, and now are, in the open, notorious, actual, and exclusive possession and occupation of all of said premises, claiming title as against all persons whomsoever, and that George W. claims and asserts some right or interest therein adverse to plaintiffs. The prayer is for an accounting between the plaintiffs and defendants relative to the copartnership business; that George W. be declared to be the trustee of the legal title to the real property for the use and benefit of the plaintiffs, that he be directed to execute and deliver to plaintiffs a good and sufficient deed conveying the legal title thereto; and that he be enjoined from the enforcement of the said judgments, and for such other relief as may seem proper in equity. To this complaint a demurrer was inter-

posed and sustained, and, plaintiffs refusing to plead further, a decree was rendered, dismissing the suit, from which they appeal.                                    AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Commodore S. Jackson*, and *Mr. Edw. B. Watson*.

For respondents there was a brief and an oral argument by *Mr. J. C. Fullerton*.

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

1. This is essentially a suit for an accounting and settlement of copartnership affairs by the surviving partner against the administrator of a deceased partner, and was instituted upon the hypothesis that equity has jurisdiction to grant relief. The defendants insist, however, that it has not, but that the county court is invested with the exclusive jurisdiction in the premises. In the view we have taken of the controversy, however, it may be conceded that equity has the requisite authority,—a matter we do not pretend to decide,—and yet it does not follow that plaintiffs have a cause of suit, as it is further insisted that the claim or demand sued upon is stale, and that it would be inequitable to permit them to pursue it at this time.   This question may be raised by a demurrer, if the complaint shows the requisite facts upon its face: *Bell* v. *Hudson*, 73 Cal. 285 (14 Pac. 791, 2 Am. St. Rep. 791).

2. Several conditions may combine to render a claim or demand stale in equity.   If by the laches and delay of the complainant it has become doubtful whether adverse parties can command the evidence necessary to a fair presentation of the case on their part, or if it appears that they have been deprived of any such advantages they might have had if the claim had been seasonably insisted upon, or before it became antiquated, or if they be subjected to any hardship that might have been avoided by reasonably prompt proceedings, a court of equity will not interfere to give relief, but will remain

passive; and this although the full time may not have elapsed which would be required to bar a remedy at law. If, however, upon the other hand, it- clearly appears that lapse of time has not in fact changed the conditions and relative positions of the parties, and that they are not materially impaired, and there are peculiar circumstances entitled to consideration as excusing the delay, the court will not deny the appropriate relief, although a strict and unqualified application of the rule of limitations would seem to require it. Every case is' governed chiefly by its own circumstances. Says Mr. Justice LORD in *Neppach* v. *Jones,* 20 Or. 491 (26 Pac. 569, 23 Am. St. Rep. 145), quoting from an English case: ''Two circumstances always important in such cases are the length of the delay and the nature of the acts done during the intervals, which might affect either party, and cause a balance of justice or injustice in taking the one course or the other, so far as relates to the remedy.'' See, also, *Weiss* v. *Bethel,* 8 Or. 522; *Sedlak* v. *Sedlak,* 14 Or. 540 (13 Pac. 452); *Lawrence* v. *Rokes,* 61 Me. 38.

By the complaint it appears that the alleged copartnership theretofore existing between W. C. Wilson and Daniel Wilson was dissolved by the latter's death November 14, 1890, more than ten years prior to the commencement of this suit, and that the remaining property belonging to such copartnership was, by the strongest inference, then in the hands of W. C. and so remains. No part of this property is shown to have gone into the hands of either George W. Wilson or George M. Brown, in either their personal or representative capacity. In December, 1892, George W., as the Washington administrator, instituted actions in this state in his representative capacity upon the promissory notes, thus affording the plaintiffs ample opportunity to set up their equitable defense by way of a cross bill, as they new concede, which would have operated to give them essentially the same relief sought in this proceeding; but they did not avail themselves thereof. They have delayed action upon their demand in any capacity until George W., as such administrator, enforced his judgments by

the sale of their lands, which he was compelled to purchase for the benefit of the estate, and until the appointment of George M. Brown as administrator in this state, and a sale of such lands in his representative capacity, at which sale W. C. became the purchaser, and until all the money obtained upon this sale, and paid by W. C. into the hands of the administrator, had been remitted to George W. as administrator in the State of Washington, there to be applied upon the indebtedness of the estate of Daniel; that is to say, until the individual estate of Daniel (for neither of the administrators had anything of the alleged copartnership property to administer) has been practically administered, and almost the whole applied by his personal representatives to the discharge of his personal indebtedness. This, it appears to us, is such an unwarranted delay, under the circumstances, as to render the plaintiffs' demand stale, and one which it would be inequitable to now permit to be enforced against the representatives of Daniel's estate. Certain it is that the plaintiffs, by their acts and laches, have put the defendants to such great disadvantages that they cannot now, by the utmost diligence, present their defense in as favorable light as they might have been able to do if the plaintiffs had seasonably pressed their claim. In the meantime, the defendants have practically administered the individual estate of Daniel, and parted with almost the entire funds, presumably in the discharge of legitimate indebtedness and demands. For these reasons, plaintiffs' claim must be treated as stale, and they cannot now be permitted to prosecute it. There are some things upon the face of the pleadings suggestive of the fact that the claim is otherwise without merit, but of this we cannot speak in a ruling upon a demurrer.

Complaint is also made that George W. Wilson became the owner of the lands purchased at the execution sale in his individual capacity, and that Brown, as administrator, could not, therefore, convey any title to W. C. under his purchase. It matters not what the condition of the title was, or who was

the owner in fee at the time, because W. C. purchased at a judicial sale, and to him the doctrine of *caveat emptor* applies in its fullest sense, and he cannot complain that he did not obtain a good title, and cannot, therefore charge George W. Wilson as a trustee of such title for his benefit.

Affirmed.

Decided 30 June, 1902.