BAILEY *v.* SAYLE.

In Banc. May 23, 1949.

(40 So. (2d) 618)

758

Stone & Stone and Creekmore & Creekmore, for appellant.

762

Cowles Horton, for appellee.

**Hall, J.**

Mrs. Lucy A. Sayle died on February 17, 1920, leaving a last will and testament whereby she devised her home to her daughter, the appellant herein, and the remainder of her property to her said daughter and her son, the appellee herein, in the proportions of one-third to the daughter and two-thirds to the son with a statement, in the nature of a request, that the son deal fairly with the two children of a deceased daughter, but specifically providing that no trust is thereby intended to be created in favor of said grandchildren. By this will, the appellee was appointed executor without bond and without the requirement of making any report as such executor to any court in this State.

On February 19, 1920, the appellee obtained the statutory affidavit of one of the subscribing witnesses to the will, and delivered the will and affidavit to the Chancery Clerk of the county of the deceased's residence, and, without any petition to the court and without any decree admitting the will to probate, the will was duly recorded by the clerk in the will records of the county. No letters testamentary were issued, and no notice to creditors was published, but the appellee proceeded to take charge of the estate of the deceased and to act and serve as executor of the will. He has never filed any inventory, report, account or other paper or pleading in court, and has never been discharged from his trust.

After his mother's death, the appellee made up a list of the assets of his mother's estate, consisting principally of cash, bonds, notes and securities, but including two parcels of land valued at $950, which list shows a total estate of $21, 443.49 according to the values placed thereon by appellee. On June 8, 1920, the appellee delivered to the two grandchildren of the testatrix, bonds, notes,

securities and cash to the total amount of $3,479.89 each, and each of them executed a receipt therefor.

In January 1948, the appellant filed a bill of complaint against appellee alleging that she has never received anything out of her mother's estate except the residence which was devised to her and a sum of money not exceeding $1,500; that the appellee took charge of the entire estate as executor de son tort, collected the notes and other securities as they became due, and has from time to time used the same for his own benefit and purposes; and that he has refused to pay appellant the balance of her one-third interest in the estate. The bill prayed for an accounting and for a money decree for her remaining interest in the estate, and for a lien upon any real property still owned by the estate to satisfy such decree.

Appellee answered and denied the alleged value of the estate, as well as all the other material allegations of the bill except the execution and recordation of the will, and except that he admitted that he accepted his appointment as executor and averred that he assumed his duties as such with the knowledge and acquiescence of the parties. His answer further alleged that he had made a complete settlement with appellant shortly after the death of the testatrix, and that she was paid all that she was entitled to receive under the terms of the will. The answer also pleaded the bar of the statute of limitations and laches.

In an opinion appearing in the record, the chancellor found, at the conclusion of the evidence on the issues in the case, that the appellee has never made a settlement or accounting with his sister, the appellant; that the record is honeycombed with one transaction after another indicating that appellee was dealing falsely with those with whom he had business transactions; and "in fact, he has covered up all the way through and the Court only wishes there was some way we could reach him." The chancellor held that appellant had a good right of action many years ago, but that she is now barred by the statute of limitations, and that she has been guilty of laches. A

decree was entered dismissing the bill upon the sole ground that the suit is barred by the statute of limitations and laches, and this appeal is prosecuted from that decree.

In 24 C.J. p. 792, Executors and Administrators, Section 1972; 34 C.J.S. Executors and Administrators, § 733, it is said: ''While it is held in some jurisdictions that the statute of limitations may avail to bar an action or suit by a legatee or distributee, against the personal representative for his share of the estate, the preponderance of authority supports the view that a statute of limitations, whether general or special, does not run in favor of an executor or administrator with respect to claims for legacies or distributive shares, for the reason that the relation of the personal representative and the legatee or distributee is that of trustee and cestui que trust, is a direct and continuing trust and therefore the personal representative's possession cannot be adverse so long as this relation exists; . . . To put the statute in operation, there must be a final settlement or at least a disavowal of the trust.''

Substantially the same rule is announced in 21 Am. Jur. p. 658, Executors and Administrators, Section 495.

In the case of Cooper v. Cooper, 61 Miss. 676, 694, this Court said: ''It is insisted for the appellee that the petitioners, or exceptors, are precluded by the statute of limitations from making any claim against the executor; that inasmuch as they were entitled to an action at law for the recovery of their legacy, which, as is claimed, they must have brought within six years, they must come within the same time, if they would call him to account in the court in which the trust is being administered, and ask payment there.

''We cannot assent to this view. Where a legacy is to be paid by an executor as such, and in the course of administration, it is a duty arising out of an expressed trust which the legatee is entitled to assume the trustee intends to execute. Until the trust is ended and the executor discharged from any further accounting, the

beneficiaries have the right to consider the trust an active one, and mere delay on the part of the trustee in settling with the court, and through it with the beneficiaries, and obtaining his discharge, cannot be considered such a breach of the trust as to set the statute in motion in his favor. To so hold would be to offer a reward to executors and adminstrators to be dilatory instead of diligent in the performance of their duties. Nevertheless, we are not to be understood as saying that there may not be cases in which, after an actual suspension of the trust, there has been such long acquiescence or delay on the part of the cestui que trust as to require the court to deny him relief upon the ground of laches.''

And in Peebles v. Acker, 70 Miss. 356, 359, 12 So 248, 249, this Court again said: ''Whatever may be the rule elsewhere, it is settled in this state that no statute of limitations runs against a legatee or the distributee of an estate pending the administration of the estate. Wren v. Gaydon, 1 How. (Miss.) 365; Jordon v. McKenzie, 30 Miss. 32; Young v. Cook, [30 Miss.] 320; Roberts v. Roberts, 34 Miss. 322; Cooper v. Cooper, 61 Miss. 676.''

See also Edwards v. Kelly, 83 Miss. 144, 35 So. 418. That case involved a will, wherein, as in the case at bar, the executor was relieved by the will from making any account or report to the court, and where he was further so relieved by the decree admitting the will to probate, yet this Court held that an action against the executor was not barred by the statute of limitations.

In 33 C.J.S., Executors and Administrators, § 147, p. 1105, it is said ''An executor or administrator is frequently regarded as a creature or officer of the court. He is subject to the direction, supervision, and control of the court until the estate is closed and he is finally discharged.'' In the instant case the estate has never been closed and the executor has never been discharged. Consequently, he is still subject to the direction and control of the court. Based upon the foregoing authorities, we are of the opinion that the chancellor was in error in

holding that appellant's claim is barred by the statute of limitations.

This brings us to a consideration of the finding that appellant is estopped under the doctrine of laches from prosecuting her claim. One of our leading cases on the subject of laches is Comans v. Tapley, 101 Miss. 203, 57 So. 567, 573, Ann Cas. 1914B, 307. In the opinion on Suggestion of Error in that case this Court said: "According to Mr. Pomeroy, with whom we fully agree, this doctrine cannot be more concisely and accurately stated than in the language of Stiness, J., in Chase v. Chase, 20 R. I. 202, 37 A. 804: 'Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but when a court sees negligence on one side and injury therefrom on the other it is a ground for denial of relief.' I Pomeroy's Equitable Remedies, § 21, and authorities there cited, particularly Wilson v. Wilson, 41 Or. 459, 69 P. 923; Lindsey Petroleum Co. v. Hurd, L.R. 5, P.C. 221; Naddo v. Bardon, 51 F. 493, 2 C.C.A. 335; Ryason v. Dunten, 164 Ind. 85, 73 N.E. 74; Neppach v. Jones, 20 Or. 491, 26 P. 569, 849, 23 Am.St.Rep. 145.

"In Wilson v. Wilson, supra, 41 Or. 463, 69 P. 924, it was said: 'Several conditions may combine to render a claim or demand stale in equity. If by the laches and delay of the complainant it has become doubtful whether adverse parties can command the evidence necessary to a fair presentation of the case on their part, or if it appears that they have been deprived of any such advantages

they might have had if the claim had been seasonably insisted upon, or before it became antiquated, or if they be subjected to any hardship that might have been avoided by reasonably prompt proceedings, a court of equity will not interfere to give relief, but will remain passive. . . . If, however, upon the other hand, it clearly appears that lapse of time has not in fact changed the conditions and relative position of the parties, and that they are not materially impaired, and there are peculiar circumstances entitled to consideration as excusing the delay, the court will not deny the appropriate relief, although a strict and unqualified application of the rule of limitations would seem to require it. Every case is governed chiefly by its own circumstances.' "

It will be noted from the above that delay in the assertion of a right will not operate as an estoppel unless such delay puts the opposite party at a disadvantage or hardship in making his defense. ▮▮ The appellee in this case contends that he is at a disadvantage because one of his bookkeepers employed from 1920 to about 1922 died in 1940, and he has been deprived of the evidence which this bookkeeper could give. The record shows that appellee was at that time the principal owner of a mercantile business which was operating as a corporation. He had two bookeepers at that time and offered one of them as a witness who testified not only with reference to the book entries made by her, but also identified the handwriting and testified as to the book entries made by the other one. Appellee does not claim that the deceased bookkeeper was a witness to any settlement which he alleges he made with appellant, and we are unable to see from the record here where the deceased bookkeeper could have testified to anything further than the evidence given by the bookkeeper who did testify. This is the only disadvantage claimed by appellee, except the further contention of his counsel that appellee's memory was not good at this time and he was unable to remember transactions which occurred back in 1920 and 1921. But the

record shows that the appellee had a very good memory as to the details of everything that he wanted to remember and a very convenient lapse of memory on those items which he wished to forget, and we are of the opinion that there is no showing here of any substantial disadvantage or hardship upon appellee by the delay in appellant's assertion of her claim. As stated in Comans v. Tapley, supra, "every case is governed chiefly by its own circumstances", and we do not feel that the circumstances here are such as to shield the appellee behind the doctrine of laches.

From the foregoing views, it follows that the decree of the lower court should be reversed. Appellant asks that we render a decree here for the amount claimed to be due her and bases this request upon a supplemental finding of the lower court, made at the instance of appellant after a decision of the case, to the effect that, if appellant were entitled to recover, the amount thereof would be one-third of $21,000 less $1,500 received. We cannot enter a decree here upon that finding for the reason that in his statement the chancellor failed to take into account the fact that a part of the statement of assets hereinabove mentioned consisted of estimated values on certain lands in which the appellant admittedly now owns an undivided one-third interest by virtue of the will. There are also other features of the record which prevent us from determining with accuracy the amount which would be due to appellant, and consequently the case will be remanded to the lower court for determination of the amount due upon an accounting at which either party may offer such further evidence on that question as may be desired.

Reversed and remanded.