BREWER, et al. *v.* BRYAN.

No. 41262          November 9, 1959          115 So. 2d 314

*B. H. Loving, Lenore L. Prather, A. C. Pippen, A. M. Edwards, Jr.,* West Point, for appellants.

*G. L. Lucas,* Columbus, for appellees.

LEE, J.

In their bill of complaint, N. S. Brewer and others, claiming to be the owners of the 223 acres of land des-

cribed therein, sought to cancel the claims of Joe E. Bryan and others in and to the said lands. Certain of the named defendants, towit, Mrs. Carrie Mae Harkins Sizemore and others, answered the bill and denied all of the material allegations thereof. At the conclusion of the trial, the chancellor delivered a written opinion with his findings of law and fact, and ordered a dismissal of the bill of complaint with prejudice as to the contesting respondents. From the final decree, in accordance with the opinion, the complainants appealed.

The material facts depicted this situation: Elias D. Bryan died testate on July 3, 1928. By his last will and testament, he made certain bequests in cash to several named beneficiaries and directed that the balance of his estate, real and personal, should be converted into cash at the earliest practical time and divided among certain other named beneficiaries in fractional interests as there stated. He appointed his brothers, W. A. and J. H. Bryan, as executors, without bond or obligation to make an accounting to any court, and with full power to fix the price, sell at public or private sale, and convey title to his real and personal property. In event of the death of one of the executors, the survivor would have all powers of both.

The will was probated, and the executors assumed their duties. On December 20, 1928, both executors, for a consideration of $1,115, executed and delivered to J. H. Bryan, one of the executors, a deed to the land involved in this litigation. Some time later, W. A. Bryan died.

The surviving executor, J. H. Bryan, made up and, on October 2, 1934, filed the final account of the executors. Three of the present appellees filed exceptions thereto, and, among other things, attacked the sale of the land by the executors to J. H. Bryan. By decree of the chancery court of date of November 15, 1934, the exception to the sale of the land was sustained, the deed

was cancelled, the executor was directed to take credit in his accounts or refund to himself $1,115, being the amount of the purchase price of the land; and he was also ordered to deal with the land as directed in the last will and testament of the decedent. At that time, according to the account, the executor had on hand $3,342.23.

Thereafter the executor, on October 20, 1937, advertised the land for sale at the courthouse in the City of West Point on October 30, 1937 but, on that date, he received no bids and made no sale.

Subsequently, on November 17, 1938 the court entered a decree for the payment of court costs, a balance of $1,000 on the fee of the attorney, and $2,000 for the fee of the executor. But neither by this decree nor the decree of September 15, 1934 was the executor discharged. At all times subsequent to the decree of November 15, 1934 J. H. Bryan continued in possession and control of this land and made no further sale thereof prior to his death on May 23, 1949. Under his last will and testament, the title to all of this land passed to his children. The widow, Mrs. Willie C. Bryan, obtained deeds from the children, and, on October 14, 1954, conveyed the land to the complainants, who filed their bill on April 18, 1955.

Such contentions of the appellants, as are necessary to be considered, have been grouped together, and may be stated as follows: (1) Although the sale by the executors to J. H. Bryan was set aside and the deed cancelled, when he offered the land for sale again, he received no bids. Therefore the title became vested in him since he had not refunded the purchase price to himself; (2) The appellees received the benefit of the purchase price, which J. H. Bryan paid; and since they did not refund the same, for that reason, they waived any rights which they may have had, and are now estopped from setting them up; (3) Although conceding that no decree, in express words, discharged J. H. Bryan, they say that

he was, to all intents and purposes, discharged by the two decrees above referred to, in 1934 and 1938; and that having taken possession and exercised full control thereto from that time until his death in 1949, J. H. Bryan acquired title to the land by advese possession; and (4) The claim of the appellees is barred by gross laches and the decree is contrary to the law and the evidence.

As to proposition (1), it should be said in passing that, when the deed was cancelled and the purchase price was ordered to be refunded, there were ample funds on hand to comply with the decree. J. H. Bryan is of course now dead; but, if he did not in fact refund the purchase price to himself, no one was to blame but him.

In Scott v. Freeland, 7 Smedes and Marshall, (15 Miss.) 409, this Court, as early as 1846, held that the decided weight of authority is that purchases by trustees of the trust estate may be set aside at the option of the cestui que trust as a matter of course. The rationale for that rule was stated as follows: "This is the safest rule; it removes temptation from the trustee. If he is permitted, under any circumstances, to become a purchaser of the trust estate, the deepest frauds may be cloaked under the guise of fairness, and exclude the possibility of proof. In granting relief, however, the court will order the property to be resold, and if it should not bring a higher price on the second sale, then the original sale is confirmed; *or the court in its discretion may set aside the sale entirely, if necessary, and order the purchase-money to be refunded.*" (Emphasis supplied.)

The decree of the court did not order the property to be resold. It left no room for confirmation of title in J. H. Bryan in the event that a subsequent sale might be deemed unsatisfactory, because it cancelled his deed outright. See 54 Am. Jur., Trusts, Sec. 464, p. 369, in

part as follows: "Where, as is usually the case, a purchase by a trustee of trust property is improper and voidable, a beneficiary of the trust may elect, as of right, to disaffirm the purchase, and as a general rule need only establish the trust relationship and the transaction, and need not show bad faith or profit to the trustee or loss to the trust estate." See also 90 C. J. S., Trusts, Sec. 303, pp. 471-5.

That Elias D. Bryan, in his last will and testament, created a trust and appointed his brothers, W. A. and J. H. Bryan, to execute it, see the construction thereof by this Court in Bryan v. Bryan, 175 Miss. 367, 167 So. 56.

As to appellants' proposition (2), it must be said that such rights, if any, as J. H. Bryan obtained by reason of the deed, were extinguished when the instrument was cancelled. He could not, by failing to pay to himself, out of the funds of the estate, the purchase price of the land, as he was ordered to do by the decree, and because of the failure to receive bids at a subsequent offer to sell, vest in himself title to the land. He was executing a trust and had made no disavowal thereof. He had not been discharged therefrom by order of the court. Consequently his possession and control of the land was for the benefit of the trust. Moreover the title to the land was in the estate of Elias D. Bryan at the time of J. H. Bryan's death, and J. H. Bryan had made no attempt by another deed to vest the title in himself. In other words, he did nothing to infringe upon the rights of the appellees; and, in the absence of an infringement, the appellees were not called upon to assert their rights. In like manner, the contention as to estoppel is untenable.

The answer to appellants' proposition (3) is that statutes of limitation do not run against a legatee or distributee of an estate until there has been a final settlement by the administrator or executor or else a

disavowal of the trust by him. Fellows v. Baas, 213 Miss. 346, 56 So. 2d 831; Bailey v. Sayle, 206 Miss. 757, 40 So. 2d 618; Peoples v. Acker, 70 Miss. 356, 12 So. 248; Cooper v. Cooper, 61 Miss. 676; Roberts v. Roberts, 34 Miss. 322; Young v. Cook, 30 Miss. 320; Jordon v. McKenzie, 30 Miss. 32; Wren v. Gaydon, 1 Howard 365. See also 34 C. J. S., Executors and Administrators, Sec. 733, p. 756; 21 Am. Jur., Executors and Administrators, Sec. 495, pp. 658-9.

The case of Edwards v. Kelly, 83 Miss. 144, 35 So. 418, is particularly applicable to the question here because the executor, in that case as in the present case, was relieved by the will from making a report to the court. Yet the opinion held in that case that, until an executor has finally accounted as such, the statute of limitations does not run in his favor in an action against him by a legatee to recover a legacy.

It is conceded that no decree, in so many words, discharged the executor. Thus there has been no final settlement and discharge. As further evidence of no discharge, the trial judge found as a fact, from the evidence, that after the payment of the balance of the solicitor's fee of $1,000, the executor's commission of $2,000 and the court costs of $43.95, there still remained in the hands of the executor the sum of $298.88, and that this amount was never distributed to the devisees and legatees named in the will. Neither did the executor at any time disavow the trust. Consequently the several statutes of limitation are insufficient, in this case, to bar the claims of the appellees.

■■ On proposition (4), namely, that the claim of the appellees is barred by gross laches, the answer is that "Laches is not mere delay but delay that works a substantial disadvantage to another." Fellows v. Baas, supra. See also Bailey v. Sayle, supra. ■■ In the former case, it was said: "No disadvantage to Baas is shown here. On the other hand, the delay has been a

great benefit to him. He has been using the property all of this time.''

The appellants, in their efforts to establish J. H. Bryan's title by adverse possession, showed a' widespread utilization of the land by him over the period in question. While the value of the revenue in dollars and cents was not shown—it was at no time reported to the court—the trial judge was warranted in finding that such use had been of great benefit to J. H. Bryan. There was no warrant for an adjudication that the appellees were guilty of laches.

It is obvious, from what has been said above, that the final decree is well-founded in law and fact, and is not against the law and the evidence.

From which it follows that the decree of the lower court must be and is affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Kyle,* and *Holmes, JJ.,* concur.