Argued July 7, reversed and remanded August 7, 1975

AGRI-LINK CORP., *Appellant, v.*
SCHMITZ ET AL, *Respondents.*
538 P2d 924

*Robert M. Johnstone,* McMinnville, argued the cause for appellant. With him on the briefs were Francis E. Marsh and Marsh, Marsh, Dashney & Cushing, McMinnville.

*William D. Rutherford,* of Rutherford & Drabkin, McMinnville, argued the cause and filed the brief for respondents.

TONGUE, J.

This is a suit to enjoin arbitration proceedings under ORS 607.304 to determine the amount of "costs" payable to defendants for the "taking up" and "keeping" of plaintiff's cattle, which had strayed upon defendants' land, and for damages allegedly caused by such cattle. Plaintiff appeals from an order dismissing its second amended complaint after the court had sustained a demurrer and plaintiff had declined to file a further amended complaint.

An examination of the record in this case reveals almost incredible confusion, for which the trial court and counsel must both share responsibility. As a result, it is difficult for this court to resolve this controversy on this appeal in any clear-cut manner and to do more than decide the procedural questions necessary to put this case "back on the track" for an orderly and proper decision of the substantive questions involved.

The facts are not entirely clear. However, from the various complaints, notices, affidavits, stipulations and correspondence between court and counsel it appears that the facts are substantially as follows.

*The facts.*

In November or December 1973, cattle belonging to plaintiff strayed upon defendants' lands. Defendants rounded up the cattle and fed them, at some considerable expense. Defendants also claim that the cattle damaged their property.

At some time between November 24 and December

12, 1973, defendants gave notices to plaintiff of the "taking up" of the cattle. Those notices were apparently intended to satisfy the requirements of ORS 607.303.[1] The parties were then unable to agree upon the "costs" payable to defendants under ORS 607.304 (2) as a condition for redelivery of the cattle to plaintiff.[2]

---

[1] ORS 607.303 provides:

"(1) A person who finds livestock unlawfully being permitted to run at large upon his premises, or premises of which he has lawful possession or control, may take up the livestock if the owner thereof is known to him.

"(2) A person taking up livestock shall within five days give notice of the taking up by certified or registered mail addressed to the owner or person having control of the livestock. The notice shall:

"(a) Contain a concise description of the livestock, including marks and brands, if any.

"(b) State that the livestock will be released to and sold by the department as an estray unless redeemed before such sale.

"(c) Designate the time and place of sale, as approved by the department. The sale shall be held not less than 30 days nor more than 45 days from the date of the taking up.

"(3) A person taking up livestock shall within five days of giving the notice provided in subsection (2) of this section forward a copy of the notice to the department or give a copy of the notice to a brand inspector or other agent of the department."

[2] ORS 607.304(1) and (2) provide:

"(1) If the owner of the livestock does not appear in response to the notice given under subsection (2) of ORS 607.303, the livestock shall be delivered to the department at least 48 hours in advance of the date of sale and shall be sold by the department as an estray. If the department is satisfied that adequate notice has been given to the owner, the department need not publish notice as required by ORS 607.328.

"(2) If the owner of the livestock does appear, the livestock shall be delivered to him or his agent if he pays to the person taking up the livestock, before the date of sale:

"(a) The cost of taking up the livestock;

Plaintiff then wrote a letter to defendants "requesting that this matter be resolved by arbitration." Both parties appointed arbitrators for the purpose of determining the amount of "costs" payable to defendants, in apparent accordance with the procedure for arbitration of such disputes as provided by ORS 607.304(3), (4) and (5), under which each party is to appoint an arbitrator and these two arbitrators are to "jointly appoint a third arbitrator."[3] Plaintiff ap-

"(b)  The cost of giving notice;

"(c)  The cost of keeping the livestock; and

"(d)  The cost of repairing any damage done by the livestock to the property of the person taking it up.

The person taking up the livestock, upon delivery thereof to the owner, shall notify the department that such notice has been taken.

"* * * * *."

[3] ORS 607.304(3), (4) and (5) provide:

"(3)  If the owner is unable to agree with the person taking up the livestock as to the amount of the costs, such owner shall:

"(a)  Give written notice of such fact to the department and the person taking up the livestock within five days of the date he is advised of the amount of the costs;

"(b)  In the same notice appoint one arbitrator to act in arbitration of such disagreement.

"(4)  Within five days after the receipt of the notice described in subsection (3) of this section, the person taking up the livestock shall give written notice to the department and the owner of his appointment of one arbitrator to act in arbitration of such disagreement.

"(5)  Upon being appointed, the two arbitrators shall jointly appoint a third arbitrator, and shall give the department written notice of such appointment. The three arbitrators shall act as a board of arbitration and may hear witnesses, take testimony, inspect documents, the livestock and premises and thereafter render their decision as to the amount allowable as costs. Such decision shall be by majority vote and conclusive as to the owner and person taking up the livestock upon receipt of the decision by the department. Written notice of such decision shall be given to the department, the owner and the person taking up the live-

pointed Roger Dumdi as an arbitrator. Defendants appointed Dale Schmitz, brother of defendant Gayle Schmitz, as an arbitrator. A third arbitrator, Ivan Dent, was then named under circumstances that are not clear. Plaintiff contends that he was "selected" by Dale Schmitz.

At about the same time, plaintiff deposited with the Oregon State Department of Agriculture the sum of $15,000 in cash, representing the amount of the "costs" claimed by defendants, as provided by ORS 607.304(7), and the cattle were then returned to plaintiff.[4]

Plaintiff objected to the appointment by defendants of Dale Schmitz as an arbitrator on the ground that as a brother of one of the defendants he could not qualify as an impartial arbitrator. Apparently defendants were not willing at that time to name another arbitrator to replace Dale Schmitz.

On January 24, 1974, plaintiff filed its original complaint in this suit, asking for an order declaring Dale Schmitz ineligible as an arbitrator and that all

---

stock within 30 days of the appointment of the third arbitrator."

[4] ORS 607.304(7) provides:

"At any time during the arbitration provided for in this section, the owner of the livestock may give written notice to the department and the person taking up the livestock of his desire to regain immediate possession and custody of such livestock. If the owner gives such notice, and at the same time deposits with the department a cash deposit in an amount equal to the accrued costs claimed by the person taking up the livestock as of the date such notice is given, the livestock shall be delivered to him or his agent within 48 hours after the giving of such notice and cash deposit. The department is authorized to pay the costs determined by the arbitrators pursuant to subsection (5) of this section to the person taking up the livestock and return the balance, if any, to the owner."

acts performed by him as an arbitrator be declared void, including the appointment of Ivan Dent as the third arbitrator, and for an injunction to "stay" the arbitration proceedings. At the same time plaintiff filed an application for a temporary restraining order and an order to show cause, supported by affidavit and a bond for $1,000. That order was then entered, setting February 8, 1974, as the date for the hearing.

On February 5, 1974, plaintiff filed an amended complaint adding, as a separate cause of suit, allegations to the effect that ORS 607.304 is unconstitutional in that its provisions for compulsory arbitration would deprive plaintiff of its right to trial by jury and of its property without due process of law and is an unlawful "delegation" of judicial power. Plaintiff also apparently submitted at that time a memorandum in support of that contention. At some undisclosed time defendants submitted an answering memorandum upon the constitutional question.

On February 7, 1974, defendants filed a demurrer on the ground "that Plaintiff has through Laches been barred from bringing this suit," based upon affidavits alleging facts relating to alleged delays by plaintiff. At the same time defendants served (if not filed) an "Application for Modification of Temporary Restraining Order" asking for an order that plaintiff "promptly arbitrate this dispute as it is required by statute" and "restraining plaintiff from further delay." In support of that "Application" affidavits were filed stating that defendants had offered to replace Dale Schmitz as an arbitrator. The "Application" contended, however, among other things, that plaintiff was "estopped" to complain of the selection of either Dale Schmitz or of Ivan Dent, as the third arbitrator, because Roger Dumdi, the arbitrator named by plaintiff, had met with Dale Schmitz and had "joined in the selection of Ivan Dent as arbitrator."

The hearing on February 8, 1974, was not recorded and no order was entered by the court at that time. From correspondence between court and counsel, however, it appears that defendants, "as an effort to compromise the matter and to gain an early determination," agreed orally with plaintiff to at least "temporarily abandon their statutory recourse"; to "file separate actions on the law side of the court to recover money damages" for the trespass by the cattle and to accept payment of an agreed amount for their "out-of-pocket losses" in "feeding and caring for the cattle"; and that this would have the effect of staying or abating both the "arbitration process" and the injunction suit, "thus deferring the need for this court to resolve the constitutional issue."

Written stipulations were then signed and filed under which $2,633.50 was paid by plaintiff to defendants for "care and feeding" of the cattle, without prejudice to the claims of either party against the other and without admission of liability for defendants' claims for damages for trespass by the cattle. Defendants then filed separate actions at law for such damages.

Although not entirely clear, it appears that plaintiff then applied for the return of the $15,000 deposit with the state as a bond on return of the cattle and that defendants opposed the return of that deposit. In any event, on April 30, 1974, plaintiff filed a motion to set this case for trial. At about the same time, plaintiff made a written demand upon the state for return of the $15,000 deposit, which was denied.

After correspondence with counsel relating to the previous agreement between the parties and the return of the $15,000 deposit, among other things, the court, by letter dated June 24, 1974, notified the parties that:

"It is obvious from your correspondence that—

despite Mr. Rutherford's clients' [defendants] willingness to stay the arbitration process and seek a judicial resolution of their claims—the original equity suit (case No. 30169) filed by Mr. Johnstone's client [plaintiff] testing the constitutionality of the statutory scheme of arbitration remains a viable file requiring determination by this court.

"Pursuant to your stipulation that both parties stand on their written memorandums and no further argument need be heard, I am now prepared to rule that *Agri-Link has failed in its burden of establishing the unconstitutionality of ORS 607.304, and, therefore, the court denies each specification of the relief sought in the amended complaint as filed February 5th.* The court is adopting Mr. Rutherford's memorandum—and he may prepare the appropriate order.

*"Please advise me promptly as to the manner in which you wish to be relieved of your earlier stipulations.*

*"Upon my signing of the above-mentioned order and the termination of existing stipulations, Mr. Rutherford's clients will be in a position to make a free election of remedies.*

"If they pursue the matter in Circuit Court, I would then be prepared to sign an order releasing Agri-Link's $15,000. Since a general denial has been filed in the Schmitz case (No. 30309) [the action for damages for trespass filed in circuit court by defendant Schmitz], that case is prepared for docketing in the normal course. As soon as a responsive pleading is filed in the Dickey case (No. 30328) [the similar action filed by defendant Dickey], the court will set it also.

"If the matter is pursued through arbitration, then the two lawsuits must be dismissed. However, if Agri-Link decides to seek appellate review on the constitutional issue, a motion by Mr. Rutherford to stay those actions pending a Supreme

Court outcome would be appropriate." (Emphasis added)

There is nothing in the record to indicate any subsequent agreement between the parties to terminate or otherwise modify their "earlier stipulation."

As previously noted, plaintiff's amended complaint included two separate causes of suit: (1) alleging that ORS 607.304 is unconstitutional, and seeking a declaration to that effect; and (2) alleging that Dale Schmitz was ineligible to act as an arbitrator and seeking an order declaring him to be ineligible and that all acts performed by him, including appointment of Ivan Dent as third arbitrator. There is nothing in the record to indicate that the sufficiency of the facts alleged in this second cause of suit had ever been the subject of argument. As also previously noted, the only motion or demurrer of record was an "Application for Modification of Temporary Restraining Order" alleging estoppel and a demurrer on the ground that plaintiff's complaint was barred by laches, based upon attached affidavits.

The order as prepared by defendants' counsel and signed by the trial court on July 2, 1974, however, was as follows:

"This matter having come on for hearing upon Plaintiff's Amended Complaint and Defendants' Application for Modification of Temporary Restraining Order, the parties having submitted memorandum and affidavits in support of their contentions; the Court having heard oral arguments and being fully informed in the premises; now, therefore, it is hereby

"ORDERED, ADJUDGED AND DECREED that *each specification of relief* sought in Plaintiff's Amended Complaint be, and is hereby, denied.

"Plaintiff shall have ten (10) days within which to further plead.

"* * * * *" (Emphasis added)

On July 11, 1974, plaintiff filed a Second Amended Complaint, in which the contentions of unconstitutionality were not repeated, but the allegations relating to Dale Schmitz and the appointment of the third arbitrator were repeated. That complaint also alleged that payment had been made for the care and feeding of the cattle; that defendants had filed separate actions at law for "alleged damages," and that plaintiff was being deprived of the use of the $15,000 cash deposit. The complaint again sought an order enjoining and staying the arbitration proceeding, declaring Dale Schmitz ineligible as an arbitrator and that all acts performed by him be declared void, and "directing the return of plaintiff's $15,000 cash deposit."

Defendants then filed a demurrer to this Second Amended Complaint on the ground that it did "not state facts sufficient to constitute a cause of action." The demurrer was then sustained. Upon plaintiff's refusal to plead further, an order was then entered dismissing the complaint with prejudice. From that order plaintiff appeals.

In its brief on appeal plaintiff contends by assignments of error that the order by the trial court denying "each specification" of its first amended complaint was in error because (1) ORS 607.304 is unconstitutional in its provisions requiring compulsory arbitration; (2) laches is not a proper ground for demurrer; and (3) by the terms of that order plaintiff was foreclosed from its contention that the arbitration proceedings were also fatally defective because of the ineligibility of Dale Schmitz as an arbitrator. Plaintiff also assigns as error the subsequent order sustaining defendants' demurrer to its second amended complaint

and thus preventing it from contending again that the proceedings were defective because of the ineligibility of Dale Schmitz and also from contending that the arbitration proceedings should be enjoined because defendants have filed actions at law for the same damages sought to be arbitrated.

Defendants' responding brief is devoted primarily to the contention that ORS 607.304 is constitutional. Indeed, most of the written and oral arguments by both parties on this appeal are directed to that question.

1. *The trial court erred in its order denying "each specification of relief sought in plaintiff's amended complaint."*

As previously stated, plaintiff's amended complaint alleged two "causes of suit": (1) that ORS 607.304 is unconstitutional; and (2) that the arbitration proceedings under that statute were fatally defective because defendants had named as an arbitrator a brother of one of the defendants, who was ineligible to act as an arbitrator and to appoint a third arbitrator. As also previously stated, the only responsive pleadings filed by defendants were a demurrer on the ground of laches and an "Application for Modification of Temporary Restraining Order" on the ground that plaintiff had unclean hands and had waived and was estopped for arguing any objections to the arbitration proceedings.

On this state of the pleadings the trial court not only undertook to decide the merits of plaintiff's first cause of suit, i.e., the question whether ORS 607.304 was constitutional but then, after holding by letter opinion that it was constitutional, entered an order denying "each specification of relief sought" in plaintiff's complaint, based upon the allegations of both causes of suit.

In holding that the trial court erred in entering such an order we start with the established rule that a court will not undertake to decide the question whether a statute is constitutional or unconstitutional unless that question is properly raised and presented by the pleadings[5] and unless a decision of that question is necessary to a disposition of the case.[6] Conversely, a court will not decide such a constitutional question when there is another proper basis for the disposition of a case.[7]

The question presented for decision by the pleadings at the time of this order by the trial court was not whether ORS 607.304 was constitutional or unconstitutional, but whether plaintiff was barred by laches, waiver or estoppel from contending that it was unconstitutional. In such an event it would not have been necessary to decide the constitutional question. Accordingly, the trial court should have decided the question of laches, waiver and estoppel before undertaking to decide the constitutional question.

■ But even the questions of laches, waiver and estoppel were not properly before the court at that time because these questions must ordinarily be raised as affirmative defenses by answer,[8] rather than by de-

---

[5] *Union Land Associates v. Ussher,* 174 Or 453, 462, 149 P2d 568 (1944); *State ex rel v. Franklin,* 163 Or 500, 504, 98 P2d 724 (1940).

[6] *Oregon Cry. Mfgs. Ass'n v. White,* 159 Or 99, 109, 78 P2d 572 (1938). See also *Pavlicek v. S.I.A.C.,* 235 Or 490, 385 P2d 159 (1963).

[7] *Dodd v. S.I.A.C.,* 211 Or 99, 102, 310 P2d 324, 311 P2d 458, 315 P2d 138 (1957); *Fed. Cartridge Corp. v. Helstrom,* 202 Or 557, 564-65, 276 P2d 720 (1954). See also *Haugen v. Gleason et al,* 226 Or 99, 107, 359 P2d 108 (1961).

[8] See *Amer. Surety Co. v. Multnomah County,* 171 Or 287, 327, 138 P2d 597 (1943); *Nelson v. Baker et al,* 112 Or 79, 95, 227 P 301, 228 P 916 (1924). See also *McIver v. Norman,* 187 Or 516, 545-46, 205 P2d 137, 213 P2d 144 (1949). A different result

murrer, much less by "Application for Modification of Temporary Restraining Order."

■ It follows that for this reason alone the trial court should have denied defendants' demurrer (on the ground of laches) as well as their "Application" (insofar as it attempted to raise the issue of waiver and estoppel). Because, however, a decision of these questions might have made it unnecessary to decide the constitutional question, the trial court should have permitted defendants to raise them by affirmative answer, subject to possible demurrer by plaintiff or trial on the merits, before undertaking to decide the constitutional question.[®]

■ In addition, as previously stated, plaintiff's second cause of suit alleged the ineligibility of Dale Schmitz as an arbitrator and the invalidity of the appointment of the third arbitrator provided. If such allegations were sufficient as a matter of law, subject to proof on trial, they would provide a separate and independent basis for the injunction sought by

may follow in a case in which laches, waiver or estoppel appears on the face of the complaint, but this is not such a case. See *Wilson v. Wilson,* 41 Or 459, 69 P 923 (1902).

[®] In making these comments we express no opinion upon either the constitutionality of ORS 607.304 or the question of possible laches, waiver or estoppel as a bar to plaintiff's claim that the statute is unconstitutional.

On the question of constitutionality of statutes requiring compulsory arbitration, however, see Annot., 55 ALR2d 432, 440-42 (1957); Sturges, "Compulsory Arbitration—What is it?", 30 Ford L Rev 1 (1961); Note, 8 Stan L Rev 410 (1956). See also Lipman, Arbitration as an Alternative to Judicial Settlement, 24 Mo L Rev 214 (1972); and 6 CJS, Arbitration 170, § 6 (1975), and cases cited therein.

On the question of laches, waiver and estoppel as a bar to the raising of constitutional objections, see *State v. Jutstron Fish Co.,* 149 Or 362, 367, 39 P2d 355 (1935); *State ex rel v. Melville,* 149 Or 532, 548-49, 39 P2d 1119, 41 P2d 1071 (1935); *Lewis v. Chamberlain,* 69 Or 476, 478, 139 P 571 (1914). See also Annot., 33 ALR3d 1242 (1970).

plaintiff. There is nothing to indicate that the trial court considered this problem in the entry of its order denying "each specification of relief sought" in plaintiff's complaint.[10].

It follows, for all of these reasons, that the trial court erred in the entry of that order.

2. *The trial court also erred in sustaining the demurrer to plaintiff's second amended complaint and in dismissing that complaint with prejudice.*

As previously stated, plaintiff's second amended complaint alleged that the arbitration proceedings should be enjoined and "stayed" both because of the ineligibility of Dale Schmitz as an arbitrator and also because plaintiff had paid defendants for the care and feeding of the cattle and defendants had filed actions at law for damages for trespass allegedly caused by the cattle.

As also previously stated, it appears from the record, including not only by the written stipulations, but the correspondence between the trial judge and counsel, that at the time of the previous hearing it was agreed that plaintiff pay to defendants an agreed amount for care and feeding of the cattle, without prejudice to claims by either party, and that defendants would then file separate actions at law for damages for trespass by the cattle.

■ It may be, as contended by defendants, that the trial court undertook to "relieve" them of such an agreement. It does not appear, however, that defendants have returned to plaintiff the money received as part of that agreement or that they have dismissed the actions at law to be filed by them as a further part

[10] On the contrary, it appears from the record that the sole basis for that order was the holding by the trial court that ORS 607.304 was constitutional as a statute.

of that agreement. On the contrary, it appears that such actions were filed and were still pending at the time of the ruling of the trial court sustaining defendants' demurrer and dismissing plaintiff's second amended complaint. Under these circumstances, the trial court had no power to "relieve" defendants from their "earlier stipulations" with plaintiff so as to permit defendants to make a "free election of remedies" and thus to again pursue the arbitration proceedings as a "more expeditious" remedy, as now contended by them.

■ In any event, it is well established that the pendency of another action between the same parties involving the same issues, although not a defense on the merits, is a ground for the abatement of an action at law or suit in equity.[11] Although an arbitration proceeding is not an action at law or suit in equity, we believe that the same rule should be applied to such a proceeding, at least in a proceeding under a statute by the terms of which final and binding arbitration is compulsory, as distinguished from arbitration proceedings based upon voluntary agreement between the parties.[12]

It follows that if plaintiff is able to prove these allegations of its second amended complaint it would be entitled to an abatement of the arbitration proceeding by an injunction staying that proceeding pending the final disposition of the actions at law. For the same reasons, it follows that the trial court erred in sustaining defendants' demurrer to plaintiff's sec-

---

[11] *Corkum v. Lenske,* 239 Or 290, 397 P2d 542 (1964); *Ukase Inv. Co. v. Smith,* 92 Or 337, 345, 181 P 7 (1919).

[12] Cf. *Louis Cooper Hats v. Kadis,* 285 App Div. 937, 138 NYS2d 839, aff'd 309 NY 705, 128 NE2d 415 (1955); and *Young v. Crescent Development Co.,* 240 NY 244, 148 NE 510 (1925), in which filing of a contract action and a mechanic's lien were held to waive a contractual right to arbitration of a contract dispute.

ond amended complaint and in dismissing it with prejudice upon plaintiff's refusal to plead further.⑨

As previously noted, plaintiff's second amended complaint also alleged again that the arbitration proceedings were fatally defective because Dale Schmitz is a brother of one of the defendants. The trial court rejected that contention in sustaining defendants' demurrer. We hold that this was also in error.

It may be that in a voluntary arbitration based upon agreement between the parties the fact that one arbitrator is so related to one of the parties would not provide a proper basis to enjoin such proceedings and that any remedy would be limited to subsequent attack upon the award of the arbitrators on grounds stated in the Oregon statute relating to arbitration under agreements to arbitrate, including ORS 33.320.

■ When, however, the arbitration is not based upon agreement between the parties, but upon the terms of a statute such as ORS 607.304, and the award of the arbitrators is made final and binding by the terms of such a statute, with no right of appeal, we believe that the integrity of such a proceeding requires that

---

⑨ It may also follow from the stipulations and agreements between counsel that by accepting payment for the cost of feeding and keeping the cattle on agreement to file a separate action at law for damages for the trespass by the cattle defendants are barred from "electing" to pursue the arbitration proceeding as a more expediting remedy. However, that contention does not clearly appear from the allegations of plaintiff's second amended complaint. In any event, it was not necessary to reach that question in ruling upon defendants' demurrer because it was improperly overruled for reasons previously stated. Accordingly, this court also need not decide that question on this appeal.

It also does not appear that the trial court would have authority to enter an order, as requested by plaintiff's second amended complaint, requiring immediate return of the $15,000 cash bond deposited with the State Department of Agriculture. The State of Oregon was not made a party to this proceeding and may have other objections to the return of that deposit.

none of the arbitrators, including those named by each party, be so closely related to either of the parties; that upon objection by either party to such an arbitrator he must be replaced by another arbitrator not subject to such disqualification; and that upon the refusal of the other party to do so the objecting party may seek the aid of a court of equity to stay the proceedings until the disqualified arbitrator has been properly replaced and to declare that any previous acts by such an arbitrator are invalid.[49] Thus, and for this additional reason, we hold that the trial court erred in sustaining defendants' demurrer to plaintiff's second amended complaint.

For all of these reasons, the order, judgment and decree of the trial court is reversed and this case is remanded for further proceedings not inconsistent with this opinion.

---

[49] See Annot., 65 ALR2d 755 (1955), and cases cited therein, particularly *Gaer Brothers, Inc. v. Mott,* 144 Conn 303, 130 A2d 804 (1957).